UNITED STATES, Appellee

v

JOHN B. BOWIE, Staff Sergeant (Temporary Disability
Retired), U. S. Air Force, Appellant

14 USCMA 631, 34 CMR 411

No. 17,520

June 26, 1964

*Major Hugh J. Dolan* argued the cause for Appellant, Accused. With
him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States.
With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial sitting in Newfoundland convicted the accused of four specifications of issuing bad checks, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a, and sentenced him to a bad-conduct discharge and confinement at hard labor for one year. At trial, the accused contended he was not subject to military jurisdiction. After an extensive hearing, the law officer ruled against him. The ruling was affirmed by the board of review, with a very thorough opinion, and is now before us for further review.

As a result of abdominal operations which affected his physical capacity, the accused was relieved from active duty in August 1961, and placed on the Temporary Disability Retired List. In that status he was, among other things, entitled to pay and was required to submit periodically to a physical examination for reassessment of his condition. Before retirement, the accused had been stationed in Newfound-land. While there, he married a local girl. After retirement, he settled in Stephenville, Newfoundland, and received from the Canadian Government permission to remain as a landed immigrant. He and his wife obtained employment at the American Ernest Harmon Air Force Base. The accused became a member of the Base Noncommissioned Officers' Open Mess. He began to engage "extensively" in all kinds of gambling games. Eventually, he cashed two checks, each in the amount of $500.00, at the Mess. These were drawn on a bank in the United States in which he had no account. Other checks were drawn on a branch of the Bank of Montreal; two of these, and the $500.00 checks, became the subjects of the charges against the accused. At trial, the accused contended that, as a retiree for physical disability, he was not subject to the Uniform Code of Military Justice and trial by court-martial.

By specific provision of the Uniform Code, retired persons of a regular com-

**631**

ponent of the armed forces, who are entitled to receive pay, are subject to the Uniform Code and to trial by courts-martial for offenses in violation thereof. Article 2(4), Uniform Code of Military Justice, 10 USC § 802. In United States v Hooper, 9 USCMA 637, 26 CMR 417, we considered the right of Congress to subject this class of former service personnel to military law. Mindful of the rationale and the decision of the United States Supreme Court in Reid v Covert, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222 (1957), which invalidated the provision of Article 2 extending courts-martial jurisdiction to civilian dependents in foreign lands, we concluded that retired persons receiving pay were sufficiently identified with the military community to allow Congress to treat them as an integral part of the armed forces subject to its constitutional authority to "make Rules for the Government and Regulation of the land and naval Forces." Article I, § 8, clause 14, Constitution of the United States.

Appellate defense counsel contend that a retiree for physical disability should be considered differently from those retired for length of service or other causes, because it cannot reasonably be expected that he will be recalled to active duty, even in time of national need. See United States v Hooper, supra, at page 645. The nature of this accused's incapacity might indeed preclude his recall, but that is not necessarily true as to all retirees for physical disability. In any event, the Uniform Code does not distinguish between retirees, on the basis of the reason for retirement; all retirees receiving pay are subject to its provisions. As we noted in the *Hooper* case, there are no "limitations or conditions put upon the exercise of the jurisdiction" over this class of persons. *Id.*, at page 640. See also Op JAGA 1955/3962, 5 Dig Ops, Re-

tirement § 20.1; Op JAGN 1952/128, 2 Dig Ops, Retirement § 15.1; Op CCCG 1954/6, 3 Dig Ops, Retirement § 15.1. We cannot engraft limitations upon the jurisdictional provision because some of the purposes which led to its enactment may not be fully realizable in a particular case.

Much of appellate defense counsel's argument was considered in the *Hooper* case, supra. We were not then persuaded that Congress acted unconstitutionally in subjecting retired personnel to the Uniform Code. Nor are we persuaded to that conclusion by the additional arguments advanced in the learned articles analyzing our *Hooper* opinion, which have been called to our attention by accused's counsel. See Blair, "Court-Martial Jurisdiction Over Retired Regulars: An Unwarranted Extension of Military Power," 50 Georgetown Law Journal 79 (1961); Bishop, "Court-Martial Jurisdiction Over Military-Civilian Hybrids: Retired Regulars, Reservists, and Discharged Prisoners," 112 University of Pennsylvania Law Review 317 (1964). As a matter of fact, Professor Bishop's article does not support the accused's position. He says: "On balance, I think it more probable than not that the [Supreme] Court, applying its status tests, would be inclined to find that retired personnel have a sufficiently military flavor to be regarded for constitutional purposes as part of the land or naval forces." *Id.*, at page 356. Since our decision in United States v Hooper, 9 USCMA 637, supra, the Court of Claims has added its weighty opinion to the constitutionality of Article 2(4). Hooper v United States, 326 F2d 982 (1964), cert den by Supreme Court of the United States, June 15, 1964, 32 Law Week 3429.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.