Jones, Senior Judge,
delivered the opinion of the court;
This is a suit for disability retirement pay. Plaintiff, executrix of the estate of the widow of a retired commissioned warrant officer (hereinafter called the decedent), contends that the decedent was “retired by reason of physical disability” and is thus eligible to elect to receive disability retirement pay under section 411 of the Career Compensation Act of 1949, 63 Stat. 802, 823-824. She asserts that certain communications from him to the Navy Department in 1949 and 1953 were sufficient to constitute an election within the *102 6-year period which that section prescribes. With each of these contentions, both essential to recovery, defendant takes issue.
Decedent’s first period of active service spanned several successive enlistments from 1911 to 1927 and terminated upon his transfer to the Fleet Reserve with the rating! of chief petty officer. Except for approximately 1 year of active duty service in 1929-1930, decedent remained in an inactive status in the Fleet Reserve until after the outbreak of war in Europe. Examined in 1940 to evaluate his fitness for recall, he was found physically unqualified for any further active duty because of several defects, not service-connected; and he was thereupon transferred from the Fleet Reserve to the retired list. Decedent was again examined in the spring of 1941. At that time he was found fit for active duty ashore, and was then recalled for such service. It was during that period of service that he suffered in December 1941 an acute attack of angina pectoris, necessitating his hospitalization for 113 days and resulting in a Medical Survey Board finding of permanent, service-connected disability. On the basis of this finding, approved by the Bureau of Medicine and Surgery, he was re-retired in April 1942.
Notwithstanding this, decedent was once again evaluated for recall in June 1942 and classified as fit for active duty ashore. Recalled once more to wartime active duty, he served until late 1945 — at first in his enlisted rank and from October 1943 onward under a temporary appointment as chief warrant officer. The examination administered early in 1943 to review his physical fitness for the temporary commission confirmed the finding that his service was to be limited to shore stations only, as did several subsequent examinations during the remainder of his active duty service. His separation from active duty became effective in November 1945, at which time he was once more returned to an inactive status on the retired list.
In October 1949, on the day following enactment of the Career Compensation Act, supra, decedent by letter requested the change from regular retirement pay to disability retirement pay. While the Navy Department’s reply has not been located, it is clear that this request was never granted. *103 Moreover, reference appears in decedent’s file at the Bureau of Medicine and Surgery to a second letter by him, dated June 25, 1953, which requested that he be advised of the appropriate manner of effecting his choice of disability retirement pay. The Physical Review Council, to which this letter was transmitted for action, concluded that decedent was ineligible to make such an election — following its then standard interpretation of section 411 that the character of the original retirement was controlling in the matter of eligibility. Thus, decedent continued to receive regular retirement pay until his death on July 23,1959.
The first issue before us is decedent’s eligibility to elect under section 411. Was he “heretofore [i.e., before October 1,1949, the effective date of the Act] retired by reason of physical disability” ?
We hold that he was so retired. Decedent’s return in April 1942 to inactive status on the retired list was a retirement by reason of physical disability. It was based upon the findings of a Board of Medical Survey that his condition of angina pectoris was disabling, permanent, and service-connected. And these findings were approved by the Bureau of Medicine and Surgery. The Board’s report as approved constitutes a “solid administrative finding” of service-connected disability, as that phrase was used in Aflague, et al. v. United States, 159 Ct. Cl. 80 (1962), 309 F. 2d 753.
We find unpersuasive defendant’s contention that decedent’s recall in June 1942 to active duty ashore constituted a rescission or a countermanding of his earlier retirement for disability. Rather, we conclude that the controlling factor was the Navy’s desire in the face of increasing emergency manpower needs 6 months after Pearl Harbor to utilize such experienced personnel as the decedent, notwithstanding their physical disabilities which would ordinarily have been regarded as disqualifying, in any useful service or special skill which they might be capable of performing.[1] This action *104 was necessary in order that others, able-bodied and wholly fit, might be freed from those less physically demanding responsibilities for combat duty or other tasks. The facts evidence no intent to countermand the Board’s findings of March 1942 and the Bureau’s approval of those findings.
Having concluded that decedent was eligible to make the desired election of disability retirement pay, we now turn to the question whether he acted in timely fashion. Section 411 prescribes that the election shall be “within the five-year period following the effective date” of the Act; i.e., before October 1, 1954. The issue, therefore, is whether the decedent adequately communicated to the Navy Department before that date a desire to elect to receive disability retirement pay.
We hold that the two letters from decedent were sufficient to constitute an election. The first, dated October 13, 1949, evidences a clear desire to transfer from regular retirement to disability retirement pay.[2] Defendant argues, however, that the fact that this letter was written but 1 day after the Act was signed into law is the strongest indication that the choice therein expressed was made wholly without regard for the right of election afforded by section 411 of that Act. We are less certain of the vigor of this inference and of the soundness of the reasoning which underlies it, especially when considered in the light of the publicity which such major legislation invariably receives among potential beneficiaries at every step of its journey through the legislative process. In any event, decedent’s communication of June 25, 1953, unquestionably represented an attempt to elect to receive disability retirement pay. Deferences in decedent’s file to this letter indicate that it was understood and treated as such by the Bureau of Naval Personnel, which forwarded the request to the Physical Review Council for a rating of his disability should that be deemed appropriate.
To be sure, in neither of the two communications did decedent designate under which of the two specific methods of *105 computation provided in section 402(d) lie desired Ms disability retirement pay to be computed; nor could be reasonably bave done so until first Ms condition bad been rated— for until tbat time tbe method most advantageous to Mm could not bave been known. But be did indicate in terms tbat were clear and unequivocal tbat be desired to receive disability retirement rather than regular retirement pay, and that is sufficient to constitute an election.
Thus, decedent was both eligible to elect and timely in so doing. The prerogative of election which we described in Scott v. United States, 122 Ct. Cl. 414 (1952), as a personal right was here exercised personally by tbe decedent.
Plaintiff is entitled to the difference between the appropriate disability retirement pay computed under section 402(d) of tbe Career Compensation Act and tbe regular retirement pay which decedent had received. Recovery will be allowed for amounts wMcb accrued during tbe period beginning July 1, 1952,[3] and ending on July 28, 1959, tbe date of decedent’s death.
Judgment is entered for plaintiff on her motion for summary judgment, and defendant’s cross-motion is denied. Tbe amount of recovery will be determined in accordance with this opinion pursuant to Rule 47 (c) (2). Tbe trial commissioner will give plaintiff a reasonable opportuMty to apply to the proper board or agency for a determination of the percentage of decedent’s disability.
In 'accordance with tbe opinion of tbe court and a memorandum report of tbe commissioner as to tbe 'amount due thereunder, it was ordered on November 20,1964, tbat judgment for Arab C. Black, Executrix of tbe Estate of Anna Black May, the deceased widow of Wiley E. May, deceased, No. 17, be entered for $558.80.

The Chief of Naval Personnel directed the decedent’s commanding officer to comply with the following opinion of the Bureau of Medicine and Surgery with respect to the assignment of responsibilities to the decedent:
“After reviewing the report of physical examination in this case and the medical history on file, it is the opinion of this Bureau that he is physically qualified for mobilization ashore only, preferably in an assignment not involving prolonged or strenuous physical exertion.”

 There appears in that letter the following statement:
“It Is my desire to change this, if possible, from regular service retirement pay to disability retirement pay. Please advise me what steps to take to do this, and if you have a special form for that purpose please forward same to me.”

 This is a continuing claim, and recovery -would ordinarily be limited to tbe period beginning 6 years before tbe commencement of tbis action. However, because decedent bad previously obtained a judgment for increased retired pay for tbe period from September 30, 1943, tbrougb June 30, 1952 (computed in accordance witb our decision in Sanders v. United States, 120 Ct. Cl. 501 (1951), and in no way involving tbe issue of tbe section 411 election), plaintiff concedes tbat tbe principle of res judicata precludes recovery of any disability retirement pay for any part of tbat period. Thus, recovery here is limited to tbe period beginning July 1, 1952.