**UNITED STATES**

v.

**Clifford M. OVERTON, 326 32 6708, Gunnery Sergeant (E–7), U.S. Marine Corps, Fleet Reserve.**

**NMCM 84 4445.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 20 June 1984.

Decided 30 Aug. 1985.

MAJ MICHAEL E. CANODE, USMC, Appellate Defense Counsel.

LT STEVEN P. BENSON, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

RAPP, Judge.

At a general court-martial, military judge alone, the appellant on 20 June 1984 was, contrary to his pleas, convicted of three violations of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881, conspiring with two others to steal property of the Navy Exchange at Naval Station, Subic Bay, Republic of the Philippines, and four violations of Article 121, UCMJ, 10 U.S.C. § 921, larceny of property from that Navy Exchange. He was sentenced to a dishonorable discharge from the U.S. Marine Corps Fleet Reserve and total forfeiture of all retainer pay.

Before us the appellant has raised one assignment of error:

ARTICLE 2(A)(6), UNIFORM CODE OF MILITARY JUSTICE, AS APPLIED TO APPELLANT IN THIS CASE IS UNCONSTITUTIONAL AND THEREFORE THE COURT–MARTIAL LACKED JURISDICTION TO TRY APPELLANT.

The appellant first enlisted in the Marine Corps on 27 May 1956 and served continuously until 2 July 1978 (a period exceeding 22 years), when he was transferred to the U.S. Fleet Marine Corps Reserve. He commenced working as a civilian employee of

the U.S. Government at the Naval Station, Subic Bay, in May 1982. In September of 1983 a security guard at the Subic Bay area Navy Exchanges, Mr. Alvin L., was solicited to join a group of persons who were stealing items from various Navy Exchange facilities apparently for sale on the black market to individuals not eligible for purchase of the goods through normal channels. Mr. L pretended interest in the proposition but in fact reported the matter to a Naval Investigative Service (NIS) agent with whom he was acquainted. At the suggestion of his NIS contact, Mr. L played along with the scheme, which functioned through false documentation, manipulation of records, and illicit removal of goods from Navy Exchange premises with the cooperation of security guards who were "on the take." Eventually the agents sprung a trap, based on Mr. L's information, and apprehended the appellant while he was transporting stolen goods in his automobile. Permission of the Secretary of the Navy was sought and received to try the appellant at court-martial pursuant to section 0116c, JAG Manual, and the case was subsequently referred to general court-martial. Before trial commenced the appellant filed a petition for extraordinary relief with the Court of Military Appeals (C.M.A.), requesting an order, *inter alia,* to cease and desist from his further prosecution. Trial commenced but in its course C.M.A. first stayed further proceedings and then vacated that stay. At trial the appellant vigorously contested jurisdiction over him. He admitted that he was receiving retainer pay for his service in the Fleet Marine Corps Reserve but pointed out that he had never been "recalled to active duty" or required to train or drill in connection with his duties as a member of the Fleet Marine Corps Reserve, to take any correspondence course, or to do anything else to keep his military status current. Nevertheless, the military judge found jurisdiction pursuant to Article 2(a)(6), UCMJ, 10 U.S.C. § 802(a)(6).

Several statutory provisions are directly applicable to this case. Article 2, UCMJ, purports to establish jurisdiction and states:

(a) The following persons are subject to this chapter:

. . . .

(6) Members of the Fleet Reserve and Fleet Marine Corps Reserve.

The terms "Fleet Reserve" and "Fleet Marine Corps Reserve" are explained in other federal statutes. Title 10 U.S.C. section 6330 states:

(a) The Fleet Reserve and the Fleet Marine Corps Reserve are composed of members of the Naval Service transferred thereto under—

(1) Title II of the Naval Reserve Act of 1938 (52 Stat. 1178), as amended; or

(2) this section.

(b) . . . An enlisted member of the Regular Marine Corps or the Marine Corps Reserve who has completed 20 years of active service in the armed forces may, at his request, be transferred to the Fleet Marine Corps Reserve.

Title 10 U.S.C. section 6485 subjects a member of the Fleet Marine Corps Reserve to specific obligations:

(a) A member of the Fleet Reserve or the Fleet Marine Corps Reserve may be ordered by competent authority to active duty without his consent—

(1) in time of war or national emergency declared by Congress, for the duration of the war or national emergency and for six months thereafter;

(2) in time of national emergency declared by the President; or

(3) when otherwise authorized by law.

(b) In time of peace any member of the Fleet Reserve or Fleet Marine Corps Reserve may be required to perform not more than two months' active duty for training in each four-year period.

A member of the Fleet Reserve and Fleet Marine Corps Reserve receives a "retainer" pay computed on the basic pay received at the time of transfer to the Fleet Reserve or Fleet Marine Corps Reserve and years of active service. 10 U.S.C. section 6330(c).

The appellant essentially argues that Article 2(a)(6) constitutes an attempt to violate the separation of powers doctrine. While conceding that Article I (legislative) courts are constitutionally permissible he contends that the jurisdiction of such courts must be strictly limited to avoid improper impingement by another branch of government on the province of Article III (judicial) courts. In the context of the present case, he agrees that the Congress can properly establish courts-martial under its Article I, section 8, clause 14, power to "make Rules for the Government and Regulation of the land and naval forces" and the "necessary and proper" provisions of clause 18. He asserts, though, that the group of persons included in the membership of the "land and naval forces" must be narrowly circumscribed to preclude undue extension of executive branch powers, particularly in view of the lesser panoply of rights available at court-martial vis-a-vis Article III courts, and strongly argues that a member of the Fleet Marine Corps Reserve cannot constitutionally be included in "land and naval forces." He is on solid ground and supported by federal case law of long-standing throughout most of his argument but goes astray where he insists that Article 2(a)(6) is an unwarranted extension of court-martial jurisdiction, as military and federal case law are to the contrary. In *United States ex rel. Pasela v. Fenno*, 76 F.Supp. 203 (D.Conn.1947), the district court specifically ruled that the predecessor provision of Article 2(a)(6) in the Naval Reserve Act of 1938 (34 U.S.C. section 853) was constitutional, and that decision was affirmed on appeal. *Pasela v. Fenno, aff'd. sub. nom. United States ex rel. Pasela v. Fenno*, 167 F.2d 593 (2d Cir.1948). Closer to home, in *United States v. Hooper*, 9 U.S.C.M.A. 637, 26 C.M.R. 417 (1958), C.M.A. upheld the jurisdiction created by Article 2(a)(4) over, "Retired members of a regular component of the armed forces who are entitled to pay," and in a case involving the same retired member the Court of Claims agreed. *Hooper v. United States*, 326 F.2d 982, 164 Ct.Cl. 151, *cert. denied*, 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964). The C.M.A. confirmed that position in *United States v. Bowie*, 14 U.S.C.M.A. 631, 34 C.M.R. 411 (1964). We see no need to reiterate the reasoning of the courts in those cases, which is set forth unequivocally and abundantly. Their principles and rationale have not been called into question by the Court of Military Appeals or the U.S. Supreme Court, and we are thus persuaded that these cases are equally applicable to members of the Fleet Marine Corps Reserve. Significantly, these cases were decided well after the case upon which the appellant most strongly relies, *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), so we can reasonably assume the courts were familiar with that decision but were unpersuaded by it. This is not surprising, as *Toth* involved an ex-service member whose connection with the armed forces had been completely severed. Similarly, other categories of persons found not within the "land and naval forces," and thus not subject to court-martial jurisdiction, were never members of such forces in the first place. *See Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960) and *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (dependents accompanying service personnel overseas). *See also McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960) and *Grisham v. Hagan*, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279 (1960) (civilian employees of the military serving overseas). As a result, these decisions are not precedent for the present case. Appellant, on the other hand, has never left the Naval Service but instead has merely been "transferred" (in the exact words of the statute) from one component to another—not retired, not discharged, not separated—and continues to receive "retainer" pay in return for his membership in the Fleet Marine Reserve. "Retainer" means a claim upon an individual's services in case of need, according to Webster's Third New International Dictionary, and appears to be an apt description of compensation for the sort of contingent

obligation imposed by 10 U.S.C. section 6330, which patently allows, but does not compel, the Government to make a specific claim upon a member and requires the member to make himself available if called. Moreover, the requirement for subject-matter jurisdiction effectively precludes unwarranted extension of Article 2(a)(6).

Thus, contrary to the appellant's claims, we see a direct and substantial connection between him and the Marine Corps which continues to make him part of the "land and naval forces." Considering our own determination and the unequivocal position of military and federal case law on the subject, we conclude that Article 2(a)(6), UCMJ, is a constitutionally permissible extension of court-martial jurisdiction.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge KERCHEVAL and Judge GRANT concur.