**UNITED STATES**

v.

**John S. ROGERS, Fireman Damage Controlman, U.S. Coast Guard.**

**CGCMS 23929.**

**Docket No. 929.**

U.S. Coast Guard Court of Military Review.

April 20, 1990.

Trial Counsel: LCDR Joseph F. Ahern, USCG.

Assistant Trial Counsel: LT Alfred G. Santos, USCGR.

Detailed Defense Counsel: LT Mark R.B. Stewart, USCGR.

Appellate Government Counsel: LCDR Michael J. Devine, USCG.

Appellate Defense Counsel: LCDR James Collin, USCG.

Before Panel One, BAUM, BRIDGMAN, JOSEPHSON and SHKOR,* Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by a Special Court-Martial consisting of officer members. Despite his pleas of not guilty, he was convicted of one specification of wrongful use of

* Judge SHKOR did not participate in this case.

cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Thereafter, the court sentenced appellant to a Bad Conduct Discharge, which has been approved by the convening authority.

Before this Court, appellant has assigned the following errors, which have been briefed and orally argued:

### I

THAT THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ALLOWING APPELLANT'S COMMANDING OFFICER TO TESTIFY AS TO THE REHABILITATIVE POTENTIAL OF APPELLANT BASED SOLELY ON THE OFFENSE INVOLVED IN THE INSTANT CASE.

### II

THAT THE MILITARY JUDGE ERRED IN ADMITTING URINALYSIS EVIDENCE BECAUSE THE TEST WAS IN REALITY AN ILLEGAL SEARCH IN VIOLATION OF MRE 313.

### III

THAT APPELLANT'S COURT–MARTIAL LACKED JURISDICTION TO TRY HIM BASED ON HIS STATUS AT THE TIME OF THE TRIAL.

### I

██ In his first assignment of error, appellant, citing *U.S. v. Ohrt*, 28 MJ 301 (CMA 1989) and *U.S. v. Horner*, 22 MJ 294 (CMA 1986), contends that testimony prior to sentencing elicited by trial counsel from appellant's commanding officer constituted prejudicial error. The complained of questions and answers were as follows:

Q. Mr. Phetterplace, is there any room in the Coast Guard for drug abuse?

A. No, sir. We can't allow that.

Q. Is drug use appropriate for a Coast Guard member?

A. No, sir.

Q. Is it a good example to other Coast Guard members?

A. Absolutely not.

Record of Trial at 238.

At first glance, these questions and answers might seem to fall under the *Horner* and *Ohrt* prohibitions against presenting a Commanding Officer's views of the severity of offenses as they might bear on requiring a punitive discharge, rather than testimony based upon an assessment of appellant's character and potential. A significant difference between the testimony here and that in *Horner* and *Ohrt*, however, is that in *Horner* and *Ohrt* the prosecution presented the commanding officers as witnesses in aggravation and developed their testimony on direct examination; whereas, in the instant case, appellant called his Commanding Officer as a witness in extenuation and mitigation to present favorable testimony concerning appellant's work and value to the Coast Guard. The testimony which appellant now finds objectionable was brought out on cross-examination by the trial counsel without objection by the defense.

Appellate Government Counsel asserts that these questions and answers constituted proper cross-examination by the trial counsel and, accordingly, do not run afoul of the strictures of *Horner* and *Ohrt*. We agree and for that reason appellant's first assignment of error is deemed to be without merit.

### II

██ In his second assignment, appellant contends that positive test results from a urinalysis sampling provided by him were erroneously admitted in evidence because the mandatory urinalysis collection was in reality an illegal search in violation of Rule 313 of the Military Rules of Evidence (MRE 313). This issue was raised at trial through a motion to suppress the test results. The evidence presented on that motion reveals that appellant was required to participate in a surprise urinalysis test for all personnel in his unit and that the urine he provided tested positive for cocaine. Several days before the urinalysis testing was ordered, appellant's Commanding Officer had been told of an anonymous tele-

phone call reporting a party attended by one or more Coast Guard personnel where drugs were supposedly used and that another such party was scheduled within a few days. Enough information was given in that call to indicate that appellant was a suspect. As a result of the call, and a report that week of a drug investigation which implicated other unit personnel, the Commanding Officer sought advice from his superiors as to whether he could have appellant and the other individuals tested for drugs. He was told that the information he had was not sufficient to provide probable cause for a search that would permit testing the suspects. Instead, it was decided to conduct a unit wide surprise urinalysis as a command inspection the day after the next party was supposed to take place.

That testing was held and everyone in the command was required to provide a urine sample. It was this urinalysis sweep that produced the evidence against appellant which he moved to suppress. The Commanding Officer testified that prior, to the anonymous phone call, he had no reason to believe that he had a drug problem in his command. After the anonymous call and notification of the implication of other personnel in a drug investigation, he became concerned about the possibility of a drug problem within his unit which might be widespread. According to this testimony, the urinalysis sweep was prompted by his desire to get to the bottom of this matter affecting the fitness of his command, not the development of evidence for possible disciplinary action.

MRE 313 relates to inspections and inventories in the armed forces. Subsection (a) provides that evidence obtained from such inspections and inventories conducted in accordance with the rule is admissible. MRE 313(b) explains what constitutes an inspection: "an examination of the whole or part of a unit ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit...." The rule goes on to include within inspections an examination to locate and confiscate unlawful weapons and other contraband. Inspections also encompass orders to produce body fluids such as urine. The rule expressly states, however, that, "an examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule."

Appellant contends that the instant urinalysis was not an inspection for this very reason. He asserts that the military judge employed the correct, "clear and convincing," standard of proof in determining whether the urinalysis was an inspection, but erroneously reached the wrong conclusion when he decided that it was an inspection. Normally, on evidentiary issues the standard of proof for admissibility is a preponderance of the evidence, but according to MRE 313(b) a higher standard of proof will apply under the following circumstances: "[i]f a purpose of an examination is to locate weapons or contraband, and if: (1) the examination was directed immediately following a report of a specific offense in the unit, organization, installation, vessel, aircraft, or vehicle and was not previously scheduled; (2) specific individuals are selected for examination; or (3) persons examined are subjected to substantially different intrusions during the same examination, the prosecution must prove by clear and convincing evidence that the examination was an inspection within the meaning of this rule."

Technically, we do not believe an order to produce urine is an examination to locate contraband. Drugs are certainly contraband and urine may contain evidence of prior use of that contraband, but the urine itself, even urine containing traces of a drug or metabolites of a drug, is not in our view contraband. Thus, arguably, a urinalysis is not an examination to locate contraband and would not justify application of the quoted higher standard of proof from MRE 313(b). The location in MRE 313(b) of the provision pertaining to body fluids immediately following the first reference to weapons and contraband, combined with the subsequent sentences concerning the

purposes that are not within the purview of inspections, lead us to conclude that the drafters intended to treat body fluids the same as contraband. Such a conclusion appears to be in accord with the following observation of Chief Judge Everett in *U.S. v. Thatcher*, 28 MJ 20, 24 (CMA 1989): "[a] broad interpretation of 'contraband' conforms to the obvious purpose of Mil.R.Evid. 313(b) to ensure that 'inspections' are not used as 'subterfuge[s for] searches.' See Drafters' Analysis to Mil.R.Evid. 313(b), 1984 Manual, *supra* at A22–17 to A22–20." To paraphrase Chief Judge Everett, this danger is as great in the present case—where conviction of illegal use of drugs can be established solely by urinalysis—as it would be if possession of the drugs themselves was involved.

Whatever the intent of MRE 313(b), the military judge applied the clear and convincing evidence standard in this case to the accused's benefit. That standard has become the law of the case and we, too, will apply it in making our independent factual assessment. That Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 requires such an independent factual determination by this Court on evidence admissibility issues, as well as other questions, is, again, in accord with the views of Chief Judge Everett, as expressed in a recent opinion. While appearing in a dissent, we believe the following observation also reflects the outlook of the majority in *U.S. v. Loukas*, 29 MJ 385 (CMA 1990):

We must remember that, even though the military judge was authorized to find the facts relevant to admissibility of the accused's statements, his power is not final. Instead, the military judge's factual determinations—like his legal conclusions—are subject to review by the Court of Military Review, which also has factfinding powers. Article 66, UCMJ, 10 USC § 866(c).

*Id.* at 396 (Everett, Chief Judge dissenting).

In exercising our factfinding powers, we give due deference to the trial judge recognizing that he heard and saw the witnesses. The judge, after hearing all the evidence on the issue of whether the urinalysis was a lawful inspection, found that the commanding officer's only concern in conducting the test was the fitness of his command. Accordingly, he determined that it was a valid command inspection under the terms of MRE 313. In this regard, he appears to have been particularly persuaded by the commanding officer's testimony concerning the mission of his command which was reflected in the following finding:

I adopt the testimony of CWO4 Phetterplace, that his only concern was the fitness of his command. Considering the mission of his command, that is understandable. Station Port Canaveral located just south of the Kennedy Space Center and close by to several DOD commands, finds itself involved in highly important governmental programs. It provides security for all space shuttle and military rocket launches at the Cape. It also provides security for Trident Missile submarines based nearby. CWO4 Phetterplace specifically mentioned his concerned [sic] about his responsibility to interface with other local DOD commands, if a drug problem existed at Station Port Canaveral. Although, not specifically, brought out in any testimony, the U.S. Coast Guard is this nation's primary maritime law enforcement agency; a fact that I will take judicial notice of. CWO4 Phetterplace did not want to shirk any of his duties in these areas. I find that to be his primary concern.

Record of Trial at 46.

We, too, have concluded from this evidence, applying the same standard as the trial judge, that the primary reason for the urinalysis testing of all personnel was to ensure the fitness of the command to meet its mission and not for the purpose of obtaining evidence for use in a trial by court-martial or other disciplinary proceedings. Appellant's second assignment of error is, therefore, rejected.

### III

▉ Appellant's third assignment is based on the assertion that he was placed on the temporary disability retired list by the Chief, Office of Personnel and Training

to be effective 6 December 1988 and that a person without authority, a Ms. Felicia Chipouras, modified that effective date. Since the modification was purportedly without authority, appellant contends that his status changed from active duty to retired on 6 December 1988 pursuant to the earlier valid action placing him on the temporary disability retired list. For that reason, he contends the Court-martial lacked personal jurisdiction over him at the time of trial on 24–26 January 1989. We disagree. Accepting as true all that appellant asserts with respect to the lack of authority of Ms. Chipouras to modify the effective retirement date, we do not believe appellant's status ever changed from active duty to retired.

Appellant stipulated at trial that he "presently is ... serving on continuous active duty with the United States Coast Guard." Prosecution Exhibit 6, Record of Trial at 51, 52. That stipulation also reflected that he was drawing active duty pay. Moreover, as Government counsel points out, it has not been contended by appellant that he ever received a discharge certificate. Thus, according to the Government, appellant comes within the long standing military rule, "that a member remains on active duty subject to jurisdiction for trial by Court–Martial absent delivery of a discharge certificate. *See e.g. United States v. Meadows,* 13 MJ 165 (CMA 1982);

*United States v. Howard,* 20 MJ 353 (CMA 1985)." Brief for Government at 17.

We agree with the government that appellant was on active duty at the time of trial and, therefore, subject to the court's jurisdiction. We also agree with the government's alternative basis for finding jurisdiction, that is, even accepting appellant's argument that his status changed by operation of law, it would not have deprived the court of jurisdiction. Retired personnel remain subject to the Uniform Code of Military Justice and court-martial jurisdiction pursuant to Article 2, UCMJ, 10 U.S.C. § 802. *See Pearson v. Bloss,* 28 MJ 376 (CMA 1989); *U.S. v. Bowie,* 14 USCMA 631, 34 CMR 411 (1964). Accordingly, the contention that the court-martial lacked personal jurisdiction is without merit.

The findings and sentence are deemed correct in law and fact and should be approved. Accordingly, the findings and sentence approved below are affirmed.

Judges BRIDGMAN and JOSEPHSON concur.