# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

―――――――――――――

## No. 201600415

―――――――――――――

## UNITED STATES OF AMERICA
Appellee

v.

## CHARLES F. REYNOLDS IV
First Sergeant (E-8), U.S. Marine Corps (Retired)
Appellant

―――――――――――――

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Michael D. Zimmerman, USMC.
Convening Authority: Commanding General, 1st Marine Division (Rein), Camp Pendleton, California.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Matthew J. Stewart, USMC.
For Appellant: Captain Bree A. Ermentrout, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC, USN; Lieutenant Robert J. Miller, JAGC, USN.

―――――――――――――

Decided 27 April 2017

―――――――――――――

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

―――――――――――――

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

―――――――――――――

CAMPBELL, Senior Judge:

At an uncontested general court-martial, a military judge convicted the appellant of a conspiracy to commit assault, violating a lawful general regulation, and three assault consummated by battery specifications—violations of Articles 81, 92, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, and 928 (2012). The military judge sentenced

the appellant to 270 days of confinement and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

In his two assignments of error (AOEs), the appellant contends the court-martial lacked personal jurisdiction under *Barker v. Kansas*, 503 U.S. 594 (1992), and a bad-conduct discharge is not an authorized punishment under 10 U.S.C. § 6632, since he is a military retiree. We disagree and affirm the findings and sentence as approved by the CA. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

While an active duty Marine, the appellant joined an outlaw biker gang, violating Department of Defense Instruction 1325.06, with Change 1, dated 22 February 2012. In January 2014, he agreed to help two fellow gang members—also enlisted Marines—assault another Marine who they believed had pursued a gang member's girlfriend. After the victim was lured to a local bar, the appellant kicked and stomped him during the attack.

On 31 January 2014, following 16 years on active duty, and 2 days after the local bar attack, the appellant was placed on the Temporary Disability Retirement List (TDRL),[1] and transferred to the Fleet Marine Corps Reserve (FMCR).[2] He was then entitled to retirement pay,[3] but waived it in favor of monthly Veterans' Administration (VA) compensation.[4] Later that year, during incidents in May and June 2014, he hit his girlfriend with his fists.

The appellant was "permanently retired on 1 September 2015,"[5] and the Marine Corps classified him as a member of its Permanent Disability Retired

---

[1] Prosecution Exhibit (PE) 1 at 1. *See* 10 U.S.C. § 1202 ("Upon a determination by the Secretary concerned that a member described in [10 U.S.C. § 1201(c)] would be qualified for retirement under [10 U.S.C. § 1201] but for the fact that his disability is not determined to be of a permanent nature and stable, the Secretary shall, if he also determines that accepted medical principles indicate that the disability may be of a permanent nature, place the member's name on the [TDRL], with retired pay computed under [10 U.S.C. § 1401].").

[2] Record at 82.

[3] PE 1 at 1-2.

[4] Appellate Exhibit (AE) XIV at 1. *See* 38 C.F.R. § 3.750(c) (2009) ("A waiver of military retired pay is necessary in order to receive disability compensation when a veteran is eligible for both military retired pay and disability compensation but is not eligible under . . . (b)(1) or (b)(2) of this section to receive both benefits at the same time.").

[5] PE 1 at 1. *See* 10 U.S.C. § 1201 ("Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the

List (PDRL).[6] He remained entitled to retirement pay,[7] but continued to waive it in favor of VA compensation.

On 17 November 2015, after compliance with Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F § 0123 (26 Jun 2012) procedures, the Secretary of the Navy authorized the appellant's apprehension and confinement, as well as the exercise of general court-martial authority over the appellant. Specifically, the CA was authorized to "refer, as necessary, any appropriate charges to court-martial as [the CA] deem[ed] warranted based on the facts and circumstances of this case."[8]

The referred specifications properly alleged the appellant's jurisdictional status at trial. A stipulation of facts and the appellant's admissions to the military judge confirmed the appellant was either on active duty, a member of the FMCR on the TDRL, or a member of the Retired list eligible to receive pay at the time of each offense to which he pleaded guilty. Although the parties did not litigate jurisdiction, the record of trial includes their research efforts and extensive discussions about the appellant's retirement status during the military judge's repeated analysis of potential punishments—centered on possible forfeitures of pay.

## II. DISCUSSION

### A. Personal jurisdiction

We review questions of jurisdiction *de novo. United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012). When personal jurisdiction is contested for the first time on appeal, appellate courts may rely upon documentary evidence to resolve the matter. *See United States v. Oliver*, 57 M.J. 170, 172-73 (C.A.A.F. 2002).

"Each armed force has court-martial jurisdiction over all persons subject to" the UCMJ. Art. 17(a), UCMJ. Our analysis "focuses on the person's status, i.e., whether the person is subject to the UCMJ at the time of the offense." *Ali*, 71 M.J. at 261-62 (citing *Solorio v. United States*, 483 U.S. 435 (1987)). Two classes of active duty military retirees are subject to the code: "Retired members of a regular component of the armed forces who are

---

Secretary may retire the member, with retired pay computed under [10 U.S.C. § 1401] . . . .").

[6] *See* Marine Corps Order 1900.16, Marine Corps Separation and Retirement Manual (26 Nov 2013) at ¶ 8203.5(h); Secretary of the Navy Instruction 1850.4E at ¶ 3705.

[7] PE 1 at 1.

[8] AE V at 1.

entitled to pay" and "[m]embers of the Fleet Reserve and Fleet Marine Corps Reserve." Art. 2(a)(4) and (6), UCMJ.

In *United States v. Dinger*, we recently considered how *Barker* impacts the validity of court-martial jurisdiction over military retirees and concluded:

> Notwithstanding *Barker* and its implications regarding the tax status of retired pay . . . those in a retired status remain 'members' of the land and Naval forces who may face court-martial. As [Dinger] was in a retired status during the offenses and the proceedings, he was validly subject to court-martial.

__ M.J. __, 2017 CCA LEXIS 194, at *8 (N-M. Ct. Crim. App. 28 Mar 2017). *Cf. United States ex rel. Toth v. Quarles*, 350 U.S. 11, 21-22 (1955) (denying court-martial jurisdiction over Toth because he was prosecuted while an "ex-servicem[a]n" already "wholly separated from the service," even though he had committed his alleged crimes while on active duty).

Like this appellant, Dinger both committed some offenses for which he was later tried while with the FMCR, and he was court-martialed in a retired status. Having noted "that the receipt of retired pay is neither wholly necessary, nor solely sufficient, to justify court-martial jurisdiction" over military retirees, *Dinger*, 2017 CCA LEXIS 194 at *5, we focus our inquiry on whether the appellant's retirement for physical disability—a factor not present in *Dinger*—excepts him from the general proposition that those "in a retired status during the offenses and the proceedings" are "'members' of the land and Naval forces who may face court-martial" for UCMJ violations. *Id.* at *8.

### 1. Court-martial jurisdiction over TDRL military retirees

Like non-disability retirees, service members on the TDRL are entitled to "retired pay," under 10 U.S.C. § 1202—computed using 10 U.S.C. § 1401.[9] But unlike other retirees, they are required to participate in military medical examinations for up to five years. 10 U.S.C. § 1210(a).[10] TDRL members can be recalled to active service if ultimately deemed fit for military duties during

---

[9] Although 10 U.S.C. § 1401 authorizes a different "multiplier" to compute pay for TDRL members than that for non-disability retirees under 10 U.S.C. § 1409, we find no differences relevant to our holding, as both statutes similarly use 10 U.S.C. §§ 1406-07 to calculate the "base pay" and call the resulting entitlement "retired pay."

[10] "A physical examination shall be given at least once every 18 months to each member . . . on the [TDRL] to determine whether there has been a change in the disability for which he was temporarily retired. He may be required to submit to those examinations while his name is carried on that list. If a member fails to report for an examination . . . disability retired pay may be terminated."

that time. 10 U.S.C. § 1211(b).[11] The potentially non-permanent nature of their disabilities and their prospects for further active service create a heightened governmental interest in good order and discipline among TDRL military retirees. So they remain "subject to court-martial jurisdiction under Article 2," UCMJ. *United States v. Stevenson*, 53 M.J. 257, 259 (C.A.A.F. 2000) (citing *United States v. Bowie*, 34 C.M.R. 411 (C.M.A. 1964)).[12]

Notwithstanding the *Barker* Court's changed view of the purpose of retirement pay, or the fact that the appellant received VA benefits in lieu of his retired pay entitlement,[13] we find no diminished government interest in ensuring good order and discipline among TDRL military retirees since *Stevenson* held they are subject to court-martial jurisdiction. Consequently, we conclude the appellant remained a member of the land and Naval forces subject to the UCMJ while on the TDRL.

### 2. Court-martial jurisdiction over permanently disabled military retirees

If a servicemember is found unfit for continued active duty "because of [a] physical disability" which is, among other requirements, "of a permanent nature and stable," the service "may retire the member, with retired pay." 10 U.S.C. § 1201. The CAAF observed in *Stevenson* that even if a servicemember

---

[11] "With his consent, any member of the naval service . . . whose name is on the [TDRL], and who is found to be physically fit to perform the duties of his office . . . shall . . . be reenlisted . . . ." Our superior court held that the "statutory requirement that a [TDRL] member consent to return to active duty does not diminish the interest of the military in the member's fitness for duty while on the TDRL," as the "detailed statutory provisions for return to duty reflect a congressional expectation that servicemembers who are determined to be fit for duty, and . . . lose entitlement to retirement pay, may well seek to return to duty." *United States v. Stevenson*, 53 M.J. 257, 259-60 (C.A.A.F. 2000).

[12] The *Stevenson* Court noted "[c]ourt-martial jurisdiction reflects the statutory concept that the TDRL is a 'temporary' assignment, not a permanent separation from active duty." 53 M.J. at 259. In *Bowie*, the Court of Military Appeals cited "the potential for recalling persons on the TDRL to active duty, particularly in times of national need," *Stevenson*, 53 M.J. at 259, as a reason that TDRL members were "sufficiently identified with the military community to allow Congress to treat them as an integral part of the armed forces[.]" *Bowie*, 32 C.M.R. at 412.

[13] *See United States v. Bowie*, 34 C.M.R. 808, 811 (A.F.C.M.R. 1964), *aff'd*, 34 C.M.R. 411 (C.M.A. 1964) (finding "no [jurisdictional] significance in the fact that" Bowie "elected to receive Veterans Administration compensation" in lieu of retired pay from the Air Force, as "at the time of trial," he was "still 'entitled to receive [retired] pay'"); *United States v. Stevenson*, 65 M.J. 639, 643-44 (N-M. Ct. Crim. App. 2006), *rev'd on other grounds*, 66 M.J. 15 (C.A.A.F. 2008) (finding a TDRL member "who has waived military disability retired pay in favor of VA disability compensation is still 'entitled to pay' and, therefore, subject to court-martial").

is "finally determined to be unfit for duty and is retired for physical disability, the member *retains military status and may be recalled to active duty* under certain circumstances." 53 M.J. at 260 (emphasis added) (citing *Akol v. United States*, 167 Ct. Cl. 99 (1964)) (additional citation omitted). Although no statute specifically governs the recall of permanently disabled retirees—10 U.S.C. § 688 authorizes service secretaries to order only "retired member[s] of the . . . Regular Marine Corps . . . to active duty . . . at any time," and 10 U.S.C. § 1211(b) governs the recall of TDRL members—no 10 U.S.C. § 688 exception exempts them from the general power to recall non-TDRL military retirees.[14]

Indeed, Department of Defense regulations "implement[ing] 10 U.S.C. 688" throughout the appellant's court-martial process authorized recalling permanently disabled retirees. Management and Mobilization of Regular and Reserve Retired Military Members, 32 C.F.R. §§ 64.1-64.5 (2011), *removed by* 81 Fed. Reg. 72,523 (20 Oct. 2016) (placing military retirees who were "retired for disability" in "Category III," and stating, without exception, that Department of Defense policy is that "military retirees be ordered to active duty as needed to perform such duties as the Secretary concerned considers necessary in the interests of national defense").[15]

Even assuming recall to any form of active duty is unlikely, given the appellant's permanent disability diagnosis, our superior court has advised:

> The nature of this accused's incapacity might indeed preclude his recall, but that is not necessarily true as to all retirees for physical disability. In any event, the Uniform Code does not

---

[14] 10 U.S.C. § 688 expressly exempts from recall only certain officers retired due to failure to select for promotion at multiple promotion boards. *See* 10 U.S.C. § 688(d). "*[E]xpressio unius est exclusio alterius*." *United States v. Wilson*, 76 M.J. 4, 7 (C.A.A.F. 2017). *Compare* 10 U.S.C. § 1201 (providing generally that the service "may retire the member, with retired pay" after a finding of permanent disability)*, with* 10 U.S.C. § 1202(b) (providing specifically that "the Secretary shall . . . place the member's name on the temporary disability retired list."). Even the express exemption from recall can be waived in the time of war or national emergency. 10 U.S.C. § 688(f).

[15] The successor instruction, Department of Defense Instruction 1352.01, Management of Regular and Reserve Retired Military Members (8 Dec 2016), has substantially similar language. *Id.* at 10, 13. It also states, "[t]he nature and extent of the mobilization of Category III retirees will be determined by each Military Service, based on the retiree's military skill and . . . the nature and degree of the retiree's disability. Category III retirees generally should be deployed to civilian defense jobs upon mobilization, unless they have critical skills or volunteer for specific military jobs," *id.* at 8, and it requires a "list of Reserve Component (RC) members" retired "for a physical disability . . . pursuant to [10 U.S.C.] 1201." *Id.* at 6.

distinguish between retirees, on the basis of the reason for retirement; all retirees receiving pay are subject to its provisions.

*Bowie*, 34 C.M.R. at 412. Although this guidance was in the context of a TDRL retiree, we find it persuasive considering, as with TDRL retirees, the Navy has occasionally recalled even permanently disabled military retirees to active duty. *See*, *e.g. Akol*, 167 Ct. Cl. at 102 (discussing a Navy member "[r]ecalled" to "active duty ashore" in 1941 "until late 1945" after a "finding of permanent, service-connected disability" from a heart condition.).

Thus, consistent with *Dinger*, we find that, "[u]nlike the wholly discharged veteran in *Toth* whose connection with the military had been severed" such that he was not subject to recall to active duty, Congress has a sufficient "continued interest in enforcing good order and discipline amongst those [servicemembers] in a retired status" who are permanently disabled, such that they too "remain 'members' of the land and Naval forces who may face court-martial." 2017 CCA LEXIS 194, at *7-8. Retired for reasons of permanent disability, not exempt from recall to active duty, and entitled to retired pay by statute,[16] the appellant was validly subject to court-martial.[17]

## B. Punitive discharge

Having established that the appellant was subject to court-martial after his retirement for permanent disability, we find no grounds to except him from our *Dinger* holding that 10 U.S.C. § 6332 does not preclude removing a member who received a punitive discharge or dismissal at trial from the Fleet Marine Reserve or the retired list, provided the discharge or dismissal is approved by the CA and affirmed on appellate review. 2017 CCA LEXIS 194, at *12. Indeed, the appellant references no facts or law specific to a permanently disabled retiree in arguing that military retirees, *in general,*

---

[16] Consistent with *Stevenson*, 65 M.J. at 639, and *Bowie*, 34 C.M.R. at 811, we find no statutory impediment to jurisdiction arising from the fact that, after retiring for permanent disability, the appellant continued to decline retired pay for VA benefits. His entitlement to pay established jurisdiction under Article 2(a)(4), UCMJ.

[17] *Accord Christopher v. United States*, 2015 CCA LEXIS 151, at *1, unpublished op. (N-M. Ct. Crim. App. 21 Apr 2015) (per curiam) (denying extraordinary writ, even "assum[ing] . . . the petitioner's transfer to the PDRL was valid," as "Article 2(a)(4), UCMJ, confers in personam jurisdiction over retired members of a regular component of the armed forces who are entitled to pay") (citation omitted).

cannot receive punitive discharges.[18] Consequently, we summarily reject his second AOE. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

### III. CONCLUSION

The findings and the sentence are affirmed.

Judge RUGH and Judge HUTCHISON concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[18] *See* Appellant's Brief of 31 Jan 2017 at 11 (arguing that under "the clear statutory language" of 10 U.S.C. § 6332, "a court-martial cannot discharge *a retiree*") (emphasis added).