UNITED STATES

v.

Mark B. MORRIS, Staff Sergeant
(E–6), U.S. Marine Corps.

NMCM 9901551.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 4 Sept. 1998.

Decided 14 March 2001.

George A. Gallenthin, Civilian Appellate Defense Counsel.

Capt William J. Collins, Jr., USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, OZMUN and NAUGLE, Appellate Military Judges.

DORMAN, Senior Judge:

The appellant stands convicted by a general court-martial consisting of a military judge sitting alone. At trial the appellant plead guilty to carnal knowledge, sodomy, indecent acts, and indecent liberties. All offenses were committed against his daughter, who was under the age of 16 at the time of the offenses. The military judge determined that the appellant's pleas were providently entered and found the appellant guilty consistent with his pleas. The appellant's offenses violated Articles 120, 125, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920, 925, and 934. The approved sentence includes confinement for 12 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. In taking his action, the convening authority suspended confinement in excess of

48 months for a period of 12 months. The convening authority also deferred and waived the execution of forfeitures and directed that they be paid to the victim.

We have carefully reviewed the record of trial, the appellant's two assignments of error, and the Government's response. We have also considered the oral argument presented in this case on 11 January 2001, in Washington, DC. We conclude, following our corrective action, that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

*Facts.* The appellant completed 20 years of active service in the Marine Corps and was transferred to the Fleet Marine Corps Reserve on 31 January 1995. Record at 41–42; Appellate Exhibit VI. Shortly after the appellant's transfer to the Fleet Marine Corps Reserve, the appellant's sexual activity with his daughter was made known to officials and an investigation involving both civilian and military agencies was conducted. Defense Exhibit A; Appellate Exhibit V. Two-and-a-half years after the appellant retired, the Commander, Marine Reserve Forces, submitted a request to the Secretary of the Navy "to recall Staff Sergeant Mark B. Morris as necessary (and separately, if required) for a period or periods of active duty ... to appear for trial by court-martial; and service of any post-trial confinement or restraint on liberty." Commander, Marine Forces Reserve Letter of 20 August 1997, Appellate Exhibit V at 1. That request was approved by the Secretary of the Navy by his letter of 5 November 1997. Appellate Exhibit IV at 2. Subsequently, the appellant was ordered to proceed from where he was living in Maiden, North Carolina, and report to the Passenger Transportation Office in Jacksonville, North Carolina.[1] Appellate Exhibit VII.

## Jurisdiction

■ In his first assignment of error, the appellant asserts that the court-martial lacked *in personam* jurisdiction over him because he was discharged and retired from active duty. Appellant's Brief of 18 July 2000 at 4–6. Seemingly, the focus of the appellant's argument is that, because Block 6 of his Certificate of Release or Discharge From Active Duty [DD Form 214] indicates that he had no reserve obligation termination date, he could not be subject to recall for court-martial. Appellant's Brief at 5; Oral Argument. He also asserts that he was not receiving "retainer pay," and that he was not on active duty at the time of his court-martial. He notes that RULE FOR COURTS-MARTIAL 204(b)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) requires that a member of a reserve component be on active duty at the time of arraignment before a general court-martial. We find no merit in the appellant's arguments.

First, the appellant has provided absolutely no authority for his argument that the absence of a date in Block 6 of his DD 214 means that he is not a reservist. Additionally, he has not established any connection between a reserve obligation termination date and his status as a member of the Fleet Marine Corps Reserve as it relates to jurisdiction, which is established by Articles 2 and 3 of the UCMJ, 10 U.S.C. §§ 802 and 803. Second, he has presented no evidence that he was not receiving retainer pay. In fact his argument contradicts his sworn statements at trial where he informed the military judge during the providence inquiry that he had been receiving retainer pay. Record at 42, 44. Furthermore, Article 2, UCMJ, makes no distinction between retired pay and retainer pay. Finally, the record before us supports the conclusion that the appellant was on active duty at the time he was arraigned, and the appellant has presented no evidence to the contrary.

Following a service member's completion of a 20–year career, upon retirement, the armed forces retain court-martial jurisdiction over such persons. Article 2, UCMJ, specifically provides that "[r]etired members of a regular component of the armed forces who are entitled to pay," as well as "[m]embers of

---

1. We note that Marine Corps Base Camp Lejeune is located in Jacksonville, North Carolina, and that the appellant's court-martial was conducted at Camp Lejeune.

the ... Fleet Marine Corps Reserve" are subject to the UCMJ. Art. 2(a)(4) and (6), UCMJ. Article 3 of the UCMJ, entitled "Jurisdiction to try certain personnel," also makes clear that jurisdiction to try the appellant was never lost in this case simply by the completion of 20 years of service. It specifically provides that:

> [A] person who is in a status in which the person is subject to this chapter and who committed an offense against this chapter while formerly in a status in which the person was subject to this chapter is not relieved from amenability to the jurisdiction of this chapter for that offense by reason of a termination of that person's former status.

Art. 3(a), UCMJ. We find the provisions of Articles 2 and 3, UCMJ, standing alone, to be sufficient to establish jurisdiction in this case.

■ We also note, however, that military appellate courts have consistently upheld court-martial jurisdiction over retirees[2] and members of the Fleet Marine Corps Reserve. In *United States v. Hooper*, 9 C.M.A. 637, 26 C.M.R. 417, 1958 WL 3394 (1958), the Court of Military Appeals upheld jurisdiction over a retired Navy admiral for offenses committed after his retirement. The court found that jurisdiction was based upon Article 2 of the UCMJ. The court also held that there was no requirement that a retiree be ordered to active duty for jurisdiction to attach.[3] *Hooper*, 9 C.M.A. at 641, 26 C.M.R. at 421. Specifically, the court noted that since the first clause of Article 2 established jurisdiction over those on active duty, there would be no purpose in the fourth clause, dealing with jurisdiction over retirees, if they had to be ordered to active duty to stand trial. *Id.* The same analysis can be applied to the case before us. If a member of the Fleet Marine Corps Reserve needed to be ordered to active duty to be subject to the jurisdiction of a court-martial, there would be no need to separately list members of the Fleet Marine Corps Reserve as being persons subject to the UCMJ.

In another case dealing specifically with jurisdiction over a member of the Fleet Marine Corps Reserve, the Court of Military Appeals upheld jurisdiction against a challenge that the exercise of jurisdiction in such a case was unconstitutional. *United States v. Overton*, 24 M.J. 309 (C.M.A.1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). In *Overton*, the accused was a Gunnery Sergeant [GySgt] who was transferred to the Fleet Marine Corps Reserve after about 22 years of service. Following his retirement, the U.S. Government employed him at the Subic Bay Naval Station in the Philippines. The crimes of which he was convicted were committed more than five years after he retired. At trial, GySgt Overton argued that there was no jurisdiction to try him, in part because "he had never been 'recalled to active duty' or required to train or drill in connection with his duties as a member of the Fleet Marine Corps Reserve...." *Overton*, 24 M.J. at 310. GySgt Overton argued that the court-martial also lacked subject matter jurisdiction because the offenses were not service connected. Our superior court had no trouble dispatching his arguments. Since we find no significant difference between the facts in *Overton* and the case before us, we find no legal merit in the appellant's arguments.

■ The appellant, however, has refined his argument beyond that advanced by GySgt Overton. He argues that as a member of the Fleet Marine Corps Reserve, he was required to be recalled to active duty by R.C.M. 204(b)(1). This Rule contains the requirement that "[a] member of a reserve component must be on active duty prior to arraignment at a general ... court-martial."

---

2. *See United States v. Stevenson*, 53 M.J. 257, 259 (2000)(upholding jurisdiction to prosecute members on the Temporary Disability Retired List under Article 2(a)(4), U.C.M.J.). *See also United States v. Allen*, 33 M.J.. 209, 216 (C.M.A.1991)(noting that "there is no doubt of the power of a court-martial to try a person receiving retired pay.").

3. Admiral Hooper was court-martialed under the procedural guidance of the MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1951, which did not contain a provision requiring members of a reserve component to be on active duty at time of arraignment. R.C.M. 204, which imposed this requirement, was a 1987 amendment to the Manual for Courts-Martial.

The appellant's argument is misplaced for two reasons. First and foremost, it is not clear that the Fleet Marine Corps Reserve is a "reserve component" as envisioned by R.C.M. 204(b)(1). We reach this conclusion by looking to Article 2 itself, the Analysis of R.C.M. 204, and by applying the same reasoning that our superior court applied in *Hooper*.

In addressing those persons subject to the UCMJ, Article 2(d) specifically addresses "[a] member of a reserve component who is not on active duty...." Applying the rationale of our superior court, if members of the Fleet Marine Corps Reserve were members of a reserve component, then Article 2(a)(6), which addresses members of the Fleet Marine Corps Reserve, would be "entirely unnecessary and could never be operative." *Hooper*, 9 C.M.A. at 341, 26 C.M.R. at 421. We also note that 10 U.S.C. § 10101 lists the reserve components of the armed forces. While this statutory provision lists the Marine Corps Reserve as a reserve component, it does not list the Fleet Marine Corps Reserve. Congress, however, was obviously aware of the existence of the Fleet Marine Corps Reserve, having defined its composition in 10 U.S.C. § 6330, and making members of the Fleet Marine Corps Reserve subject to the UCMJ in 10 U.S.C. § 802(a)(6)—Article 2(a)(6) of the UCMJ.

Second, the Analysis of R.C.M. 204(b)(1) makes clear that its focus was not on retirees. First, the entire Rule was added to the Manual for Courts–Martial after amendments were made to Articles 2 and 3 of the UCMJ by the Military Justice Amendments of 1986. Those amendments addressed jurisdiction over reservists and did not amend the long-standing provisions concerning jurisdiction over retirees and members of the Fleet Marine Corps Reserve. The Analysis explains that:

> Use of the term "member of a reserve component" in Article 3(d) means membership in the reserve component at the time

disciplinary action is initiated. The limitation in subsection (b)(1) restricting general and special courts-martial to periods of active duty is based upon the practical problems associated with conducting a court-martial only during periods of scheduled inactive-duty training, and ensures that the exercise of court-martial jurisdiction is consistent with the policies set forth in Article 2(d).

Manual for Courts–Martial, Unites States (1998 ed.), App. 21, at A21–13. While it is unclear whether members of the Fleet Marine Corps Reserve are part of the reserve component,[4] it is clear to us that R.C.M. 204(b)(1) was not intended to apply to retirees and members of the Fleet Reserve or the Fleet Marine Corps Reserve.

Regardless of whether the appellant was required to be on active duty at the time he was arraigned, the evidence before us indicates that he was on active duty at his arraignment. First, Appellate Exhibit V contains a letter from the Commander, Marine Reserve Forces, requesting the Secretary of the Navy to order the appellant to "active duty." Appellate Exhibit V at 1 and 3; see also Subject Line of Appellate Exhibit V at 1–3 and at ¶ 6. The Secretary of the Navy granted this request on 5 November 1997 by his return letter to the Commander, Marine Reserve Forces. Appellate Exhibit IV at 2.

Second, during the providence inquiry, the appellant admitted that he was on active duty:

MJ: Now were you recalled to active duty?

ACC: For the purpose of this trial, sir.

MJ: So you were recalled to active duty for the purpose of this trial?

ACC: Yes, sir.

MJ: Was that pursuant to Article 2(a)(4) of the Uniform Code of Military Justice?

---

4. Title 10 of the United States Code does not clearly define the term "reserve components." The reserve components are named in 10 U.S.C. § 10101, to include the Marine Corps Reserve. Chapter 1005 of Title 10 lists the "Elements of Reserve Components" and 10 U.S.C. § 10154 lists the "Retired Reserve." In identifying the composition of the Retired Reserve, 10 U.S.C. § 10154 seems to limit the composition to retired officers, not enlisted personnel. Neither the Fleet Reserve nor the Fleet Marine Corps Reserve are listed in Chapter 1005.

TC: Sir, the Staff Sergeant was transferred to the Fleet Marine Corps Reserve. He doesn't enter the retired list until he reaches 30 years cumulative for service. On the 20th year of active service, at that time on his request, he was transferred to the Fleet Marine Corps Reserve and from that time forward received retainer pay.

Article 2(a)(6) specifically provides for the Marine Corps to continue exercising court-martial jurisdiction over those members who have been transferred to the Fleet Marine Corps Reserve as is Staff Sergeant Morris at this time, sir.

MJ: All right, Article 2(a)(4) also provides that retired members of the regular component of the Armed Forces who are entitled to pay are subject to this chapter.

TC: Correct, sir.

MJ: And I agree that 2(a)(6) provides that members of the Fleet Reserve and Fleet Marine Corps Reserve are also subject to the chapter; and Staff Sergeant Morris, were you, in fact, a member of the Fleet ... Marine Corps Reserve at the time you were called to active duty?

ACC: Yes, sir.

MJ: And are you satisfied and willing to admit that you are and were, in fact, a person subject to the Uniform Code of Military Justice at that time?

ACC: Yes, sir.

MJ: Have you had the opportunity to discuss this matter with your defense counsel?

ACC: Yes, sir, we have talked about this.

MJ: Were you in fact receiving retainer pay?

ACC: Yes, sir.

MJ: Trial counsel, do we have copies of the documentation authorizing Staff Sergeant Morris to be returned to active duty?

TC: Yes, sir.

Record at 41–42. Following this dialog, the trial counsel identified the documentation as the letter from the Commander, Marine Reserve Forces and the response from the Secretary of the Navy, addressed above.

Further evidence of the fact that the appellant was recalled to active duty is the information contained in block 7a of the charge sheet. This block shows that the appellant was receiving $2,097 basic pay per month at the time of his court-martial. This amount was the correct pay of an active duty Staff Sergeant with the appellant's years of service at the time of the appellant's trial. It is considerably more than the appellant's retainer pay would have been at the time. At trial the appellant acknowledged, through counsel, that the personal data listed on the charge sheet was correct. Record at 55.

Although the appellant now alleges that he was not recalled to active duty, he has not presented **any** evidence to support that argument. We, however, in examining the record of trial, find ample evidence, including the appellant's own statements made during the providence inquiry, to conclude that the appellant was on active duty at the time he was court-martialed. Accordingly, since the appellant was both subject to trial by court-martial as a member of the Fleet Marine Corps Reserve, and on active duty at the time of his court-martial, we find no merit in the appellant's argument that the court-martial lacked *in personam* jurisdiction over him.[5] Based upon our review of the record

---

5. Although not addressed by either party, we note that secretarial instructions prohibit ordering a member of the Fleet Marine Corps Reserve to active duty solely for the purpose of exercising court-martial jurisdiction. JAGMAN § 0123a(1). This prohibition however is not related to jurisdiction, as the same section states that such members may simply be ordered to appear. Apparently, the prohibition is a fiscal consideration. Once ordered to appear members would continue to draw their retired pay or retainer pay. See

*United States v. Allen*, 33 M.J. 209, 215 (C.M.A. 1991); *United States v. Allen*, 31 M.J. 572, 635 (N.M.C.M.R 1990). Additionally, by calling a member of the Fleet Marine Corps Reserve to active duty would also result in a recalculation the member's retirement pay. 10 U.S.C. §§ 1402a and 6330(c)(2). This prohibition, however, is merely policy and was not promulgated for the benefit of an accused. *See e.g. United States v. Kohut*, 44 M.J. 245 (1996).

we find more than a preponderance of the evidence to support jurisdiction in this case. *United States v. Bailey*, 6 M.J. 965, 967 (N.C.M.R.1979); R.C.M. 905(c)(1) and 905(c)(2)(B).

### Ineffective Assistance of Counsel

In his second assignment of error, the appellant argues that he was deprived of the effective assistance of counsel at his court-martial. Central to the appellant's argument is his assertion that his trial defense counsel, Capt. [K], was not "authorized to practice law under the authority of the State of Ohio from 1991–1999." Appellant's Brief at 6. The appellant further asserts that Capt. [K] "perjured himself" under Article 27(b), UCMJ, 10 U.S.C. § 827(b). *Id.* at 4, 6. In support of these allegations the appellant has attached a letter from the Supreme Court of Ohio concerning Capt. [K]'s status with the Bar of Ohio.[6]

In attempting to perfect his claim of ineffective assistance of counsel, the appellant has also alleged three instances of specific prejudice. First, he alleges that Capt. [K] failed to conduct pretrial interviews of prosecution and defense witnesses, or to investigate any physical evidence in the case. Second, he alleges that Capt. [K] failed to request to depose co-conspirators (principals) prior to the Article 32, UCMJ, investigation or the appellant's court-martial. Third, the appellant alleges that Capt. [K] failed to object to major changes made to the charges in violation of R.C.M. 603(d). Appellant's Brief at 8–9.

■ With respect to the allegation that the appellant's counsel was not authorized to practice law, we find no merit in the appellant's argument. First of all, the inactive bar status of a judge advocate does not in and of itself constitute a deprivation of the right to counsel. *United States v. Steele*, 53 M.J. 274,

278 (2000). Second, we find that the appellant has failed to establish that his trial defense counsel was not authorized to practice law before trials by courts-martial. Since counsel enjoy a strong presumption of competence, an appellant bears a "very heavy burden in overcoming the presumption." *United States v. Mahler*, 49 M.J. 558, 562 (N.M.Ct.Crim.App.1998). *See also Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

On appeal the appellant reads far too much into the letter from the Ohio Supreme Court, which he incorporated into his brief. Nowhere does the letter say that Capt. [K] is not in good standing with the Bar of Ohio. In fact, the letter says that under Rule VI of the Supreme Court Rules for the Government of the Bar of Ohio, members of the Ohio Bar are required to file a certificate of registration by the first of September of each odd numbered year. If an attorney fails to file the registration, that attorney is not considered to be in good standing. The letter, however, reports that Capt. [K] has registered every two years from 1991 until the date of the appellant's trial. Although he has registered for inactive status, that status simply means he is not entitled to practice law in Ohio until such time as he requests and is granted active status again. This is precisely the situation that was addressed in *Steele*. We also find **absolutely no support** for the appellant's allegation that Capt. [K] perjured himself or perpetrated a fraud on the trial court.[7]

With respect to the appellant's allegations of specific prejudice, we find **absolutely no support** for these allegations in the record before us. They appear to simply be bald face allegations. Since it is the appellant's burden to overcome the strong presumption of competence by his trial defense counsel,

---

6. Since this letter from the Ohio Supreme Court is a matter from outside the record the appellant is required to submit the matter to us by motion, rather than by incorporating the document into his brief. Courts of Criminal Appeals Rule 23; N.M.Ct.Crim.App. Rule 4–8.3. Although the letter from the Supreme Court of Ohio is neither in the correct form, nor submitted to us in the correct manner, we nevertheless have considered its content.

7. We caution against making allegations that trial participants committed criminal and ethical violations absent solid proof that such violations occurred. Such charges are very serious and should not be alleged in a hyperbolic fashion as the appellate defense counsel has done in this case. Indeed, to do so comes dangerously close to an ethical violation. *See* Rules of Professional Conduct, Candor Toward the Tribunal.

we find that he has not met the minimal threshold to trigger further investigation into this issue. *See United States v. Lewis*, 42 M.J. 1, 6 (1995)(holding that trial defense counsel should not be compelled to justify their actions until a court of competent jurisdiction has determined that the allegations *and the record contain evidence* which, if unrebutted, would overcome the presumption of competence).

Here there is no *evidence* that Capt. [K] did not interview witnesses, investigate physical evidence, or that he did not seek to depose critical witnesses. There is no evidence that he did these things either. The appellant has, however, failed to identify witnesses that should have been interviewed or deposed, or even the existence of physical evidence or co-conspirators (principals) in this case. In fact, during oral argument, the appellant was invited to identify such persons and he was unable to do so. Finally, Capt. [K] would have been under no obligation to object to a change in the charges on the date alleged by the appellant, February 24, 1998, because the charges had not even been preferred on that date. The appellant's second assignment of error is **totally** without merit.

### Reduction to Pay Grade E–1

 Although not raised as an issue, we find that it was error to impose a reduction to pay grade E–1 in this case. This issue has been addressed twice before by our superior court, and in both instances that court concluded that a retiree could not be reduced in grade at a trial by court-martial. Since jurisdiction in this case was based upon the appellant's status as a member of the Fleet Marine Corps Reserve, and not upon the fact that he had been recalled to active duty, we conclude that these prior decisions are binding precedent in this case. *See United States v. Sloan*, 35 M.J. 4, 11–12 (C.M.A. 1992); *United States v. Allen*, 33 M.J. 209, 216–217 (C.M.A.1991). We will grant relief in our decretal paragraph.

### Conclusion

Accordingly, we affirm the findings. We also affirm that portion of the sentence as extends to a bad-conduct discharge, confinement for 12 years and forfeiture of all pay and allowances.

Judge OZMUN and Judge NAUGLE concur.