Philip LAWRENCE, Major (O–4), U.S. Marine Corps Reserve, Petitioner,

v.

John A. MAKSYM, Commander, Judge Advocate General's Corps, U.S. Naval Reserve, Military Judge,

and

United States, Respondents.[1]

NMCM 200300173.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 25 June 2003.

1. On 20 February 2003, we granted the convening authority's motion to be released as a respondent to the petition.

John B. Wells, Civilian Attorney for the Petitioner.

LT Frank L. Gatto, JAGC, USNR, Appellate Government Counsel.

LT Christopher J. Hajec, JAGC, USNR, Appellate Government Counsel.

Before PRICE, CARVER, and RITTER, Appellate Military Judges.

CARVER, Judge:

Petitioner comes before us to request extraordinary relief under the All Writs Act, 28 U.S.C. § 1651(a), in the nature of a writ of prohibition to prevent the court-martial from proceeding or, alternatively, a writ of mandamus to direct the military judge to dismiss the charges. He contends that the court-martial lacks personal jurisdiction over him, because there is no authority to recall him to active duty from the inactive reserves for trial by court-martial. This court has the authority to grant the extraordinary relief requested to ensure the integrity of the judicial process. *Aviz v. Carver*, 36 M.J. 1026, 1028 (N.M.C.M.R.1993). However, after a thorough review of the record of trial, briefs by both parties, petitioner's reply brief and oral argument, we decline to grant the request for extraordinary relief.

## Background

Petitioner is a major in the U.S. Marine Corps Reserve. Charges were preferred against him on 23 July 2002, alleging unauthorized absence, violation of an order, willful dereliction of duty, and conduct unbecoming

an officer and a gentleman, in violation of Articles 86, 92, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 933. The offenses all arose from the Government's allegation that the petitioner accepted Active Duty for Special Work (ADSW) orders to report to Baltimore for duty during the period 17–21 October 2001, but failed to execute those orders properly.[2] The order specification was dismissed after arraignment, leaving the other three offenses now pending against the petitioner.[3]

The petitioner was later ordered to another period of ADSW by Presidential Recall in support of Operation Enduring Freedom from 15 January 2002 until 2 June 2002, when he received a Department of Defense (DD) Form 214 entitled CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY.

On 6 August 2002, the general court-martial convening authority issued an involuntary recall and order to active duty for the petitioner to attend an Article 32, UCMJ, investigation into the allegations. However, at the request of the petitioner, the United States District Court for the Eastern District of Louisiana issued a Temporary Restraining Order (TRO) against the convening authority on 7 August 2002. After hearing evidence and oral argument on 20 August 2002, the District Court denied a request for permanent injunctive relief and dissolved the TRO on the same day.[4] The Petitioner then appealed to the United States Fifth Circuit Court of Appeals.[5] Subsequent to the Dis-

2. The petitioner has alleged that the officer who signed the ADSW orders did not have authority to do so and, further, that the petitioner became ill during the period of ADSW and was unable to perform his required duties. Petitioner's Motion for Stay of 31 Jan 2003 at 1–2. Even if true, those matters are not relevant to the issue of personal jurisdiction. *See United States v. Phillips*, 58 M.J. 217 (C.A.A.F.2003).

3. During oral argument, the petitioner's counsel asserted that there is no reason to try him in a military court-martial, since he could be tried in a U.S. District Court for a fraudulent travel claim. We note, however, that he is not charged with submitting a false travel claim, but rather with the military offenses of unauthorized absence, willful dereliction of duty, and conduct unbecoming an officer and a gentleman.

4. The District Court found that, "Although Major Lawrence was discharged from active duty, he was neither separated from, nor did he resign from the USMC Reserve. He is clearly amenable to the 'jurisdiction of this chapter' pursuant to Art. 3 [of the UCMJ], and may be involuntarily recalled to active duty status for the purpose of an Art. 32 investigation." Appellate Exhibit II at 73 (Order and Judgment of U.S. District Court of 20 Aug 2002).

5. During oral argument, the petitioner's counsel stated that, on 6 May 2003, the Fifth Circuit entertained oral argument on the appeal of the District Court's decision. We are not aware of any further action or decision by the Fifth Circuit. It should also be noted that the petitioner may appeal our ruling to the United States Court

trict Court ruling, the petitioner voluntarily agreed to appear for the Article 32 investigation, without admitting personal jurisdiction.

The charges were referred to trial by general court-martial on 8 November 2002. The petitioner voluntarily agreed to be arraigned 15 November 2002, at which time he submitted two motions to the military judge: (1) a motion for appropriate relief to stay the court-martial proceedings until decision by the Fifth Circuit on his appeal of the District Court's ruling, and (2) a motion to dismiss for lack of personal jurisdiction. The request for a stay was apparently denied without a specific ruling and the court-martial proceedings continued. Evidence and oral argument on the motion to dismiss were presented at an Article 39(a), UCMJ, hearing on 16 December 2002. The military judge denied the motion to dismiss at the next Article 39(a) session on 13 January 2003. At the same hearing, the military judge entertained several other motions and set the case for trial on 10 February 2003.

The petitioner filed his request for extraordinary relief with this court on 30 January 2003. On 5 February 2003, we granted his motion to stay the court-martial proceedings. We also requested that the Judge Advocate General (JAG) of the Navy appoint counsel to represent the parties, ordered the respondents to show cause why the petition should not be granted, and ordered the respondents to provide an authenticated copy of the record of the proceedings. On 20 February 2003, we granted a motion by the Government to release the convening authority as a party. On 10 March 2003, the petitioner requested oral argument, which we granted on 7 April 2003. Oral argument was presented on 8 May 2003.

### Facts

In resolving the motion to dismiss for lack of personal jurisdiction, the military judge made findings of fact and conclusions of law. "If the military judge makes findings of fact, we review the findings under a clearly erroneous standard of review. We review conclusions of law *de novo.*" *United States v. Springer,* 58 M.J. 164, 167 (C.A.A.F.2003)(cit-

of Appeals for the Armed Forces. *See Murphy v.*

ing *United States v. Alameda,* 57 M.J. 190, 198 (C.A.A.F.2002)). None of the parties contend that the military judge's findings were erroneous at all, much less, clearly erroneous. We find that the evidence supports his findings and we adopt them. The military judge found:

3. THE FACTS—The Court does not see a review of the charges faced by Major Lawrence as relevant to the call of the pending motion. In summary, Major Lawrence has been a selected reserve officer of many years and was subjected to recall in support of Operation Enduring Freedom on 15 January 2002. Subsequently, this officer was released from active duty on 2 June 2002. Prior to his service in support of the war on terrorism, Major Lawrence enjoyed a seemingly distinguished career in the United States Marine Corps and United States Marine Corps Reserve. The accused officer entered active duty in the Marine Corps on 27 February 1987 and was released from initial active duty as a Captain on 30 September 1993. Since his release from the regular Marine Corps in 1993, Major Lawrence has continually held the President's commission in the United States Marine Corps Reserve. Moreover, from the briefs submitted by both the United States and the Defense, the Court has discerned that Major Lawrence has **never** terminated his reserve affiliation by resignation. Indeed, he has enjoyed an all rather active reserve career and is presently a selected Lieutenant Colonel. During the period covered by the alleged offenses, Major Lawrence was a selective reservist affiliated with the 4th Marine Division Reserve Staff and accepted ADSW orders on 17 October 2001. Generally, this case stems from allegations that the accused officer did not properly carry out a period of Active Duty for Special Work (ADSW) from 17–21 October 2001.

Appellate Exhibit XXIV (Military Judge Ruling on Defense Motion to Dismiss for Lack of Personal Jurisdiction of 13 Jan 2003).

*Garrett,* 29 M.J. 469 (C.M.A.1990).

## Standard of Review

"[A] Writ of Mandamus is a drastic remedy that should be used only in truly extraordinary situations. *United States v. Labella*, 15 M.J. 228 (N.M.C.M.R.1983).... To justify extraordinary relief, the petitioner bears the burden of demonstrating that he is entitled to it as a clear and indisputable right. [*United States v.*] *Thomas*, 33 M.J. [768,] at 770 [(N.M.C.M.R.1991)]; *Smithee v. Vorbach*, 25 M.J. 561 (C.G.C.M.R.1987)." *Aviz*, 36 M.J. at 1028.

## Termination of Military Status

The petitioner contends first that he cannot be recalled to active duty for trial by court-martial, because he was discharged from the Marine Corps Reserves when he received a DD 214 and pay for completion of ADSW on 2 June 2002.

■ "Generally, other than a few narrow exceptions, jurisdiction over active duty military personnel continues until the member receives a valid discharge; there is a final accounting of pay; and the member has completed administrative clearance processes required by his or her service Secretary." *United States v. Williams*, 53 M.J. 316, 317 (C.A.A.F.2000)(citing *United States v. King*, 27 M.J. 327, 329 (C.M.A.1989); *United States v. Melanson*, 53 M.J. 1 (C.A.A.F.2000)).

■ The petitioner asserts that the DD 214 by its own wording is equivalent to a discharge certificate. However, we find that the petitioner was not discharged when he received the DD 214. He merely terminated a period of reserve active duty, but remained a member of the inactive reserves. The DD 214 reflects that the petitioner was a member of the USMCCR (KM)(Ready Reserve or Standby Reserve who may be recalled to active duty by the President), that he was recalled to active duty "In support of Operation Noble Eagle Enduring Freedom," that the separation authority was paragraph 1005 of the Marine Corps Separation and Retirement Manual (MARCORSEPMAN) and that

his Separation Code was MBK5 (voluntary release—Recalled to active duty).

Further, the petitioner admitted in sworn testimony in U.S. District Court that he remains in the Marine Corps Reserves. He stated, however, that he does not know whether he is still a member of the Selected Reserve or the Individual Ready Reserve (IRR).[6]

The Ready Reserve consists of the Selected Reserve, the IRR, and the National Guard. Both the Selected Reserve and the IRR are liable for recall to active duty in time of war or national emergency per 10 U.S.C. §§ 12301(a) and 12302. In *Willenbring v. Neurauter*, 48 M.J. 152, 156 (C.A.A.F. 1998), our superior court noted the increasing importance of the reserves: "The reserve components perform a critical role in the national defense policy of the United States." We also note that our nation continues to rely on the Reserves. Since the tragic events of September 11, 2001, 22,000 Marine Reservists, including 3,500 members of the IRR, have been recalled to active duty.[7]

We agree with the military judge's finding that the petitioner never resigned from the reserves and we find that he is still in the reserves. Although the findings of fact are sufficient to resolve this petition, the military judge is directed to make additional findings of fact as to the petitioner's exact reserve status.[8]

■ Alternatively, the petitioner asserts that he was transferred to the Retired Reserve when he was released from ADSW, because his DD 214 reflects that he completed 20 years of service (11 years and 5 months of active service and 10 years and 5 months of inactive service). Although this issue was not developed at the trial court, we agree with the petitioner that the DD 214 reflects a total of 21 years and 10 months of active and inactive service. But there is nothing in the record to indicate that 21 years of service were all creditable retirement years. Fur-

---

6. Appellate Exhibit II at 15, 18.

7. *Called-up IRR Marines get time to meet weight goals*, MARINE CORPS TIMES, 12 May 2003, at 26.

8. *See Willenbring*, 48 M.J. at 175 (requiring the military judge to make additional findings of fact and conclusions of law as to the issue of termination of service during any further proceedings in the case).

ther, there is no evidence that the petitioner ever requested transfer, or was transferred without a request, to the Retired Reserve. We find that the petitioner remains a member of the Ready Reserve, either the Selected Reserve or the IRR.

## Personal Jurisdiction Over Inactive Reservist

The petitioner next contends that Articles 2 and 3 either do not confer court-martial jurisdiction over him or, if so, they are unconstitutional under *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955) and *United States ex rel. Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949).

■ The issue before us is whether there is court-martial jurisdiction over a reservist on inactive duty who was charged with offenses committed during a prior period of active duty where there has been no change in status, other than from active reserve duty to inactive reserve duty. We hold that the petitioner is subject to court-martial jurisdiction under Articles 2 and 3. We also hold that those Articles are not unconstitutional.

In the similar case of *United States v. Caputo*, 18 M.J. 259 (C.M.A.1984), our superior court ruled that, although Caputo was subject to court-martial jurisdiction when he committed the offense while on active duty, court-martial jurisdiction ceased when he returned to the inactive reserves. The court ruled that he could not therefore be recalled to active duty specifically for judicial proceedings.

However, in 1986, Congress made amendments to Articles 2 and 3 of the UCMJ, 10 U.S.C. §§ 802 and 803, to effectively overrule the *Caputo* case. First, Article 2(a)(3) was modified to eliminate the requirement that the reservist must voluntarily accept orders to active duty in order for court-martial jurisdiction to attach. Second, Article 2(d) was added to provide for authority, under regulations established by the President, to involuntarily activate reservists not on active duty for the purposes of nonjudicial punishment or court-martial proceedings. Third, Article 3(d) was added to provide that a reservist would still be subject to court-martial jurisdiction, even after the termination of a period of active duty or inactive duty for training, for offenses committed during a period of active duty or inactive duty for training. *Willenbring*, 48 M.J. at 168.

After amendment, Articles 2 and 3 now provide, in pertinent part:

§ 802. Art. 2. Persons subject to this chapter

(a) The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, ... and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

. . . .

(d)(1) A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 81 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of

(A) investigation under section 832 of this title (article 32);

(B) trial by court-martial; . . . .

(2) A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was

(A) on active duty; or

. . . .

(3) Authority to order a member to active duty under paragraph (1) shall be exercised under regulations prescribed by the President.

(4) A member may be ordered to active duty under paragraph (1) only by a person empowered to convene general courts-martial in a regular component of the armed forces.

§ 803. Art. 3. Jurisdiction to try certain personnel

(a) Subject to section 843 of this title (article 43), a person who is in a status in which the person is subject to this chapter and who committed an offense against this

chapter while formerly in a status in which the person was subject to this chapter is not relieved from amenability to the jurisdiction of this chapter for that offense by reason of termination of the person's former status.

. . . .

(d) A member of a reserve component who is subject to this chapter is not, by virtue of the termination of a period of active duty or inactive-duty training, relieved from amenability to the jurisdiction of this chapter for an offense against this chapter committed during such period of active duty or inactive-duty training.

Arts. 2 and 3, UCMJ.

"The term 'active duty' means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school. . . ." *Willenbring*, 48 M.J. at 173 (quoting 10 U.S.C. § 101(d)(1)). Our superior court then summarized:

> In view of these developments, the state of the law with respect to reservists following the 1986 amendments to Articles 2 and 3 was as follows: If there was a complete termination of military status with no subsequent military service, then the former servicemember would not be subject to court-martial jurisdiction for prior-service offenses as a matter of constitutional law under Toth. . . . Finally, if there was a change in status between regular and reserve service, or within various forms of reserve service, unaccompanied by a complete termination of military status, then the reservist would be subject to court-martial jurisdiction for all prior-service offenses to the same extent as a regular whose military status had changed in form without a complete termination of military status.

*Id.* at 170.

The President implemented the amendments to Articles 2 and 3 in 1987 by promulgating RULE FOR COURTS-MARTIAL 204, in part, as follows:

(d) A member of a reserve component at the time disciplinary action is initiated, who is alleged to have committed an offense while on active duty or inactive-duty training, is subject to court-martial jurisdiction without regard to any change between active and reserve service or within difference categories of reserve service subsequent to commission of the offense. This subsection does not apply to a person whose military status was completely terminated after commission of any offense.

RULE FOR COURTS-MARTIAL 204, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.).[9]

■ As to the issue of constitutionality, our superior court said:

> However, consistent with both Toth and Hirshberg, the Rule [204] notes that subsection (d), insofar as it provides that a change in status within categories of military service did not terminate jurisdiction, would "not apply to a person whose military status was completely terminated after commission of an offense." RCM 204(d). The Discussion accompanying that Rule notes—.
>
> > A "complete termination" of military status refers to a discharge relieving the servicemember of any further military service. It does not include a discharge conditioned upon acceptance of further military service.
>
> The Drafter's Analysis of the Rule, 1984 Manual, supra at A21–13, states that subsection (d) "reflects legislative intent 'not to disturb the jurisprudence of *United States ex rel. Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949)' (H.R.Rep. No. 718, 99th Cong., 2d Sess. at 227 (1986))."

*Willenbring*, 48 M.J. at 169–70.

Since Articles 2 and 3 do not provide for personal jurisdiction over former reserve personnel for offenses committed prior to a complete termination of military status, we hold that those provisions of Articles 2 and 3 are not unconstitutional.

We further find that the petitioner had no break in service between the period of ADSW and the petitioner's return to the

---

9. The above-quoted provisions of R.C.M. 204 have not changed since promulgated in 1987.

inactive reserves. We therefore find and hold that the inactive reserve petitioner is subject to court-martial jurisdiction under Articles 2 and 3 for offenses alleged to have been committed while on reserve active duty.

### JAGMAN Implementation

Finally, the petitioner contends that even if there is personal jurisdiction under Articles 2 and 3, there is no court-martial jurisdiction over him, because the Secretary of the Navy did not implement R.C.M. 204 properly. We find and hold otherwise.

R.C.M. 204(a) provides:

(a) *Service regulations.* The Secretary concerned shall prescribe regulations setting forth rules and procedures for the exercise of court-martial jurisdiction and nonjudicial punishment authority over reserve component personnel under Article 2(a)(3) and 2(d), subject to the limitation of this Manual and the UCMJ.

R.C.M. 204 was subsequently implemented in the Manual of the Judge Advocate General (JAGMAN), Judge Advocate General Instruction 5800.7C (Ch 3, 27 Jul 1998) for members of the Naval Service, in pertinent part, as follows:

d. *Jurisdiction over reserve component personnel under article 3(d), UCMJ.* A member of a reserve component subject to the UCMJ is not, by virtue of termination of a period of active duty or inactive duty training, relieved from amenability to jurisdiction of the UCMJ for an offense against the UCMJ committed during such period of active duty or inactive duty training.

e. *Order to active duty in the case of reserve component personnel not on active duty*

(1) When jurisdiction is based upon article 3(d), UCMJ, members of a reserve component not on active duty may be ordered to active duty involuntarily only by an officer described in subsection (4) for the purpose of investigation under article 32, UCMJ, trial by court-martial, or imposition of nonjudicial punishment for offenses committed while subject to the UCMJ without regard to any change between active and reserve service or within different categories of reserve service subsequent to commission of the offense.

(2) Requests for an order to active duty under this subsection may be submitted only by officers empowered to convene courts-martial.

(3) Requests for an order to active duty under this subsection shall:

. . . .

(4) The request should be addressed to an officer empowered to convene a general court-martial in the chain of command of the accused at the time of its submission, as designated in section 0120a, and who is superior in grade to the submitting officer, or to the Secretary of the Navy, if confinement authority is requested.

JAGMAN §§ 0123d, 0123e.

The petitioner contends that JAGMAN § 0123e above should have referenced Article 2(a)(3) and 2(d) instead of, or in addition to, Article 3(d). We agree that R.C.M. 204 requires the service Secretary to implement Article 2(a)(3) and 2(d), but it is clear to us that JAGMAN § 0123e does in fact implement R.C.M. 204 and Article 2(a)(3) and 2(d), since it lists the procedures to be used to exercise nonjudicial punishment and court-martial jurisdiction over reservists. We find no prejudice to any material right of the petitioner by the failure of JAGMAN § 0123e to explicitly reference Article 2(a)(3) and 2(d).

In the case of the petitioner, the request for an order to active duty was made to the officer exercising general court-martial jurisdiction, who subsequently issued the order to the petitioner for a period of active duty for the purposes of a pretrial investigation and court-martial. We find that this procedure complies with the requirements of Articles 2(d), 3(d), R.C.M. 204, and JAGMAN § 0123e.

### Conclusion

Upon review of the facts and circumstances, we find that the petitioner is still a

member of an inactive reserve component and is subject to court-martial jurisdiction for an offense alleged to have been committed while on reserve active duty. Accordingly, we hereby deny the petitioner's request for extraordinary relief without prejudice to his right to raise the issue before this court in the normal course of appellate review. We also lift the stay on the proceedings below.

Senior Judge PRICE and Judge RITTER concur.