# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

—————————————

## No. 201600108

—————————————

## UNITED STATES OF AMERICA
Appellee

v.

## DEREK L. DINGER
Gunnery Sergeant (E-7), U.S. Marine Corps (Retired)
Appellant

—————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Christopher M. Greer, USMC.
Convening Authority: Commander, Marine Corps Installations
National Capital Region, Marine Corps Base, Quantico, VA.
Staff Judge Advocate's Recommendation: Major Michael J. Eby,
USMC.
For Appellant: Captain Bree A. Ermentrout, JAGC, USN.
For Appellee: Major Tracey L. Holtshirley, USMC; Lieutenant
Taurean Brown, JAGC, USN; Lieutenant Robert J. Miller, JAGC,
USN.

—————————————

Decided 28 March 2017

—————————————

Before GLASER-ALLEN, RUGH, and HUTCHISON, *Appellate Military
Judges*

—————————————

## PUBLISHED OPINION OF THE COURT

—————————————

RUGH, Judge:

A military judge sitting as a general court-martial convicted the appellant pursuant to his pleas of two specifications of committing indecent acts, one specification of attempting to produce child pornography, two specifications of wrongfully making an indecent visual recording, and one specification of receiving, viewing, and possessing child pornography, in violation of Article

120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006), and Articles 80, 120c, and 134, UCMJ, 10 U.S.C. §§ 880, 920c, and 934 (2012). The military judge sentenced the appellant to nine years' confinement and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged, but suspended all confinement over 96 months pursuant to a pretrial agreement.

The appellant now asserts two assignments of error (AOE): (1) that his court-martial lacked personal jurisdiction over him in light of the U.S. Supreme Court's holding in *Barker v. Kansas*, 503 U.S. 594, 605 (1992), that for tax purposes, military retirement benefits are not current compensation for reduced services; and (2) that Congress' statement in 10 U.S.C. § 6332 that the transfer of a member of the naval service to a retired status "is conclusive for all purposes" precludes the issuance of a punitive discharge to a retiree.[1]

Having carefully considered the record of trial, the pleadings, and oral argument, heard on 15 February 2017 at the George Washington University School of Law, we disagree and affirm the findings and sentence as approved by the CA.

## I. BACKGROUND

From 1 November 2003 to 1 August 2013, following his service on active duty in the Marine Corps, the appellant was a member of the Fleet Marine Corps Reserve List ("Fleet Marine Reserve").[2] He was then transferred to the active duty retired list ("retired list").[3] He received retirement benefits after transferring to the Fleet Marine Reserve.

---

[1] This court restyled the AOEs from the appellant's brief. Oral Argument Order of 5 Dec 2016.

[2] An enlisted member of the Marine Corps may, after 20 years of active duty, elect transfer to Fleet Marine Reserve. 10 U.S.C. § 6330(b). In this status the member receives "retainer pay" based primarily on years of active duty service. *Id.* § (c)(1). After 30 total years, the member is transferred "to the retired list of the . . . regular Marine Corps" and receives "retired pay" at "the same rate as the retainer pay[.]" 10 U.S.C. § 6331(a), (c).

[3] We will refer generally to Fleet Marine Reserve and retired list membership as "retired status," as military courts have treated the two statuses interchangeably for purposes of court-martial jurisdiction. *See, e.g. Pearson v. Bloss*, 28 M.J. 376, 379-80 (C.M.A. 1989) (treating a member of the Air Force "Retired Reserve" as a retiree because "[w]hile there still may be some difference between the obligations of these service groups . . . their common pay entitlement, access to military bases and services, and general duty obligations strongly support" treating both as "part of the armed forces for purposes of court-martial jurisdiction") (citations and internal quotation marks omitted). Since personnel in either status are subject to similar

Of the offenses to which the appellant pleaded guilty, two were committed solely while he was a member of the Fleet Marine Reserve[4] and one was committed solely after his transfer to the retired list.[5] The remaining offenses were committed on divers occasions,[6] overlapping the dates he was a member of the Fleet Marine Reserve and on the retired list.[7] The appellant committed each of the offenses in Okinawa, Japan, where he and his family lived.

Based on a Naval Criminal Investigative Service investigation, the Secretary of the Navy, per Department of the Navy policy,[8] specifically authorized the CA "to apprehend, confine, and exercise general court-martial convening authority" over the appellant while he remained in a retired status.[9] At the appellant's court-martial, the military judge held, over trial defense counsel's objection, "that a punitive discharge is an authorized punishment" for the appellant.[10]

---

obligations, we too find no grounds to distinguish between the two categories with respect to the jurisdiction of a court-martial.

[4] Charge I, Specifications 1 and 2, alleging separate instances of indecent conduct committed by the appellant against his daughter and stepdaughter between on or about January 2011 and on or about January 2012.

[5] Additional Charge II, Specification 2, alleging that the appellant made indecent recordings of his wife without her consent between on or about 1 June 2014 and on or about 31 June 2014.

[6] *See* Record at 101; Appellate Exhibit XI (the consolidated Charge II, Specification 1, alleging that between on or about 11 October 2012 and on or about 4 September 2014, the appellant received, possessed, and viewed child pornography images and videos); Record at 59, 73-80 (Additional Charge I and its sole specification, alleging that the appellant between on or about 11 October 2012 and on or about 4 September 2014, attempted to produce child pornography; and Additional Charge II, Specification 1, alleging that between on or about 11 October 2012 and on or about 4 September 2014, the appellant made indecent recordings of his stepdaughter). The latter specifications were merged for sentencing. *Id.* at 86, 101-02.

[7] We note that the consolidated specification of Charge II, the specification of Additional Charge I, and Specifications 1 and 2 of Additional Charge II erroneously describe the appellant as having exclusively been "on the active duty retired list" through his commission of the offenses. Per our discussion *supra* at note 3, the appellant was equally amenable to court-martial jurisdiction whether as a Fleet Marine Reserve member or on the retired list. As a result, we find no prejudice from this error, and we correct the specifications in our decretal paragraph.

[8] Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F § 0123a.(1) (26 Jun 2012).

[9] Appellate Exhibit III.

[10] Record at 31.

## II. DISCUSSION

### A. Court-martial jurisdiction over those in a retired status

Jurisdiction is a legal question we review *de novo. United States v. Tamez*, 63 M.J. 201, 202 (C.A.A.F. 2006).

By act of Congress, the appellant was subject to the UCMJ when he committed the offenses. Art. 2(a), UCMJ ("The following persons are subject to this chapter . . . . Retired members of a regular component of the armed forces who are entitled to pay. . . . [and] Members of the Fleet Reserve and Fleet Marine Corps Reserve."). Congress has continually subjected some Naval retirees to court-martial jurisdiction since long before enactment of the UCMJ.[11]

The Supreme Court first tacitly recognized the power of Congress to authorize court-martial jurisdiction in *United States v. Tyler*, when it held that Tyler, who was retired, should benefit from a Congressionally-authorized military pay increase because, among other reasons, Congress had subjected Tyler "to the . . . [A]rticles of [W]ar" and "a military court-martial[] for any breach of those rules[.]" 105 U.S. 244, 244-46 (1882). The Court explained that because Tyler's "retirement from active service" came with "compensation . . . continued at a reduced rate, and the connection" between Tyler and the government thus "continue[d]." *Id.* at 245. Later courts have cited *Tyler* for the proposition that receipt of retirement pay is one reason Congress may constitutionally authorize courts-martial of those in a retired status.[12]

---

[11] *See, e.g.* Act of Aug. 3, 1861, Ch. 42, 12 Stat 287 (1861) (enacting that "retired officers shall be entitled to wear the uniform of their respective grades, shall continue to be borne upon the navy register, shall be subject to the rules and articles governing the Navy, and to trial by general court-martial.")In contrast, Congress has disclaimed broad court-martial jurisdiction over retired members of the Naval Reserve. *Compare* Naval Reserve Act of 1938, ch. 690, 52 Stat. 1175, 1176 ("[M]embers of the Fleet Reserve and officers and enlisted men . . . transferred to the retired list of the Naval Reserve Force or the Naval Reserve or the honorary retired list with pay . . . shall *at all times* be subject to the laws, regulations, and orders for the government of the Navy and shall not be discharged . . . without their consent, except by *sentence of a court martial*[.]") (emphasis added), *with* Act of May 5, 1950, Ch. 169, 64 Stat. 107, 109 (subjecting "[r]etired personnel of a reserve component" to the UCMJ only if "receiving hospitalization from an armed force), *and* S. REP. No. 81-486, at 7 (1949) (describing the UCMJ as "a lessening of jurisdiction over retired personnel of a Reserve component" since "existing law" gave "jurisdiction over retired Reserve personnel").

[12] *See, e.g. United States v. Hooper*, 26 C.M.R. 417, 425 (C.M.A. 1958) (allowing the court-martial of a retired admiral for offenses he committed while in a retired status in part because "[o]fficers on the retired list" continue to "receive[] a salary");

However, three developments have undermined this rationale for court-martial jurisdiction. First, the Supreme Court held that this theory did not justify trial by court-martial of military dependents. *Reid v. Covert*, 354 U.S. 1, 19-20, 23 (1957) (denying court-martial jurisdiction over "civilian wives, children and other dependents" stationed overseas, even though "*they may be* accompanying a serviceman abroad *at Government expense* and *receiving other benefits from the Governmen*t.") (emphasis added). Second, in 1992 the Supreme Court decided in *Barker* that at least for tax purposes, "military retirement benefits are to be considered deferred pay for past services" instead of "current compensation" to retirees "for reduced current services." 503 U.S. at 605. Third, recent decisions have allowed courts-martial of former members of the active duty military who, rather than separating, remain in the Active Reserves or the Individual Ready Reserve in a "nonduty, nonpay status"[13] (albeit only for offenses previously committed on active duty).[14]

From these developments it is clear that the receipt of retired pay is neither wholly necessary, nor solely sufficient, to justify court-martial jurisdiction. As a result, we must call upon first principles to assess the jurisdiction of courts-martial over those in a retired status.

---

*Hooper v. United States*, 326 F.2d 982, 987 (Ct. Cl. 1964) (holding in a review of a suit brought by the accused in *United States v. Hooper*, *supra*, that "jurisdiction by military tribunal" over the appellant was "constitutionally valid," because "the salary he received was not solely recompense for past services").

[13] *United States v. Nettles*, 74 M.J. 289, 290, 292-93 (C.A.A.F. 2015) (noting that the convening authority had ordered the appellant from the "Individual Ready Reserve" to "active duty for [court-martial] proceedings," and then "allowed him to return to a nonduty, nonpay status"); *see also Lawrence v. Maksym*, 58 M.J. 808, 814 (N-M. Ct. Crim. App. 2003) (denying application for extraordinary writ by "the inactive reserve petitioner" because he "is subject to court-martial jurisdiction under Articles 2 and 3[, UCMJ] for offenses alleged to have been committed while on reserve active duty"). *Cf. United States ex rel. Toth v. Quarles*, 350 U.S. 11, 21-22 (1955) (denying court-martial jurisdiction over crimes allegedly committed while Toth was on active duty, because he was prosecuted while an "ex-servicem[a]n" already "wholly separated from the service").

[14] These members must be recalled to active duty for court-martial proceedings, while those in a retired status like the appellant, by contrast, need not be recalled to active duty as a prerequisite to prosecution at court-martial. *See United States v. Morris*, 54 M.J. 898, 900 (N-M. Ct. Crim. App. 2001) ("If a member of the Fleet Marine Corps Reserve needed to be ordered to active duty to be subject to the jurisdiction of a court-martial, there would be no need to separately list members of the Fleet Marine Corps Reserve as being persons subject to the UCMJ.").

The Constitution allows "Congress to authorize military trial of *members* of the armed services[.]"[15] *Reid*, 354 U.S. at 19 (emphasis added). The Constitution requires a close relationship between those subject to court-martial and the military establishment,[16] because:

> [T]he jurisdiction of military tribunals is a very limited and extraordinary jurisdiction . . . and, at most, was intended to be only a narrow exception to the normal and preferred method of trial in courts of law. Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as a deprivation of the right to jury trial and of other treasured constitutional protections.

*Id.* Those subject to trial by court-martial lose some procedural rights guaranteed ordinary citizens.[17] They are also subject to prosecution for acts or speech otherwise protected from civilian prosecution by the Constitution.[18]

---

[15] There are other theories of jurisdiction which are not generally applicable to those in a retired status, and thus outside the scope of this opinion. *E.g.* Art. 2(a)(10), UCMJ (claim over those "serving with or accompanying an armed force in the field").

[16] *See Reid*, 354 U.S. at 30 ("The Constitution does not say that Congress can regulate . . . 'all other persons whose regulation might have some relationship to maintenance of the land and naval Forces.'").

[17] For instance, there is "no right to have a court-martial be a jury of peers, a representative cross-section of the community, or randomly chosen," all of which are guarantees in civilian trials by jury. *United States v. Dowty*, 60 M.J. 163, 169 (C.A.A.F. 2004).

[18] *E.g.* Art. 88, UCMJ (prohibiting "contemptuous words" against some public officials). For an historical example of a retiree court-martialed for such conduct, *see Closson v. United States*, 7 App. D.C. 460, 470-71 (D.C. Cir. 1896) (considering petition of a retired Army officer charged at court-martial for an "intemperate and improper letter written . . . to the general commanding the army"). And note, that even the potential for such prosecutions can have a chilling effect on the behavior of those in a retired status. *See UCMJ: Hearings on H.R. 2498 Before a Subcomm. of the H. Comm. On Armed* Services, 81st Cong. 706-07 (1949) (statement of Col. Melvin J. Maas, President, Marine Corps Reserve Association) (recounting how after a military retiree had published an article critical of the War Department, an official warned the retiree against "mak[ing] any public statement[,] under penalty of being court-martialed and losing his retired pay"); *UCMJ: Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the S. Comm. On Armed Services*, 81st Cong. 99 (1949) (statement of Col. Maas) ("You certainly ought not to put the retired military personnel under this control. . . . [T]hey get their retirement because they earned it. . . . [To] prevent dictatorship, you must unmuzzle them . . . .").

That said, "judicial deference" is "at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged,"[19] and the Court has correspondingly acknowledged that Congress could define "a person [as] 'in' the armed services" and subject to court-martial jurisdiction "even [if] he [or she]. . . did not wear a uniform"– indeed, even if he or she had only been sent a notice of induction and "not [yet] formally been inducted into the military[.]" *Reid*, 354 U.S. at 22-23; *Billings v. Truesdell,* 321 U.S. 542, 544, 556 (1944) (finding "no doubt of the power of Congress to enlist the [citizens] of the nation" into the military, and "to subject to military jurisdiction those who are unwilling" to take the oath of induction into the military, if Congress desired to do so).

The appellant had a closer relationship with the military than the pre-induction draftee, whom the Supreme Court has repeatedly suggested is subject to court-martial jurisdiction. Unlike the wholly discharged veteran in *Toth* whose connection with the military had been severed, a "retired member of the . . . Regular Marine Corps" and a "member of the . . . Fleet Marine Corps Reserve" may be "ordered to active duty by the Secretary of the military department concerned at any time."[20] "[I]n both of our wars with Iraq, retired personnel of all services were actually recalled,"[21] demonstrating Congress' continued interest in enforcing good order and discipline amongst those in a retired status.

As the Court stated in *Tyler*:

> It is impossible to hold that [retirees] who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, . . . are still not in the military service.

---

[19] *Solorio v. United States*, 483 U.S. 435, 447 (1987) (citations and internal quotation marks omitted).

[20] 10 U.S.C. § 688. This is also similar to the scenario of the inactive Reservist who was subject to court-martial in *Lawrence,* 58 M.J. at 814. *See* 10 U.S.C. § 12304(a) (stating that the President "may authorize the Secretary of Defense . . . without the consent of the members concerned, to order. . . any member in the Individual Ready Reserve . . . under regulations prescribed by the Secretary concerned . . . to active duty for not more than 365 consecutive days").

[21] Francis A. Gilligan & Fredric I. Lederer, *Court-Martial Procedure*, § 2-20.00, 24 (4th ed. Matthew Bender & Co. 2015) ("In recent years, for example, the Army has instituted a policy of issuing recall orders to selected retired personnel with the orders to be effective in case of national emergency.").

105 U.S. at 246.[22]

Notwithstanding *Barker* and its implications regarding the tax status of retired pay, we are firmly convinced that those in a retired status remain "members" of the land and Naval forces who may face court-martial. As the appellant was in a retired status during the offenses and the proceedings, he was validly subject to court-martial.

## B. Punitive discharge of those in a retired status

The second AOE presents a question of statutory construction, an issue of law reviewed *de novo. United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014). Title 10 U.S.C. § 6332 provides that "[w]hen a member of the naval service is transferred by the Secretary of the Navy" from active duty to a retired status or transferred from one retired status to another:

> [T]he transfer is conclusive for all purposes. Each member so transferred is entitled, when not on active duty, to retainer pay or retired pay from the date of transfer in accordance with his grade and number of years of creditable service as determined by the Secretary. The Secretary may correct any error or omission in his determination as to a member's grade and years of creditable service. When such a correction is made, the member is entitled, when not on active duty, to retainer pay or retired pay in accordance with his grade and number of years of creditable service, as corrected, from the date of transfer.

In *United States v. Allen*, our superior court cited this statute, among other factors,[23] to support its holding that "because appellant was tried as a retired member, he could not be reduced [in rank]. . . by the court-martial[.]" 33 M.J. 209, 216 (C.M.A. 1991) (citing Navy policy, a law review article espousing that retiree "forfeiture of pay, and by analogy reduction, was not necessary to satisfy the military interest[,]"[24] and a Comptroller General

---

[22] *See also Barker*, 503 U.S. at 599 ("Military retirees unquestionably remain in the service and are subject to restrictions and recall . . . ."); *Kahn v. Anderson*, 255 U.S. 1, 6-7 (1921) (allowing those in a retired status to serve as members at courts-martial because "retired . . . officers are officers in the military service of the United States").

[23] *See United States v. Sloan*, 35 M.J. 4, 11 (C.M.A. 1992) ("*Allen* itself clearly reflects [that] our decision there was not dependent solely upon this statutory provision").

[24] Joseph W. Bishop, Jr., *Court-Martial Jurisdiction Over Military-Civilian Hybrids: Retired Regulars, Reservists, and Discharged Prisoners*, 112 U. PA. L. REV. 317, 356-57 (1964). Of note, Bishop suggested that punitively discharging a retiree was a more appropriate punishment than reduction in rank. *Id.* at 353 ("[T]he

opinion). The appellant claims the statute also precludes punitive discharge of retirees.[25] We disagree.

We define terms in a statute based on their "ordinary meaning" and the "broader statutory context." *United States v. Pease*, 75 M.J. 180, 186 (C.A.A.F. 2016). "We are also guided by the following rules of statutory construction: (1) a statute will not be dissected and its various phrases considered *in vacuo*; (2) it will be presumed Congress had a definite purpose in every enactment; (3) the construction that produces the greatest harmony and least inconsistency will prevail; and (4) statutes in *pari materia* will be construed together." *United States v. Ferguson*, 40 M.J. 823, 830 (N.M.C.M.R. 1994) (citing *United States v. Johnson*, 3 M.J. 361 (C.M.A. 1977)).

Title 10 U.S.C. § 6332 has its origins in legislation creating the United States Naval Reserve,[26] in which Congress provided that "[m]en transferred to the Fleet Naval Reserve shall be governed by the laws and regulations for the government of the Navy and shall not be discharged from the Naval Reserve Force without their consent, except by sentence of a court-martial."[27] But, Congress replaced those provisions with language similar to the present statute in 1938,[28] which it re-enacted in 1952.[29]

---

appropriate punishment should . . . be distinctively military. Practically speaking, in the case of retired personnel, this means dismissal . . . or dishonorable discharge . . . .")

[25] Critically, in *Sloan*, our superior court recognized the potential for disparate treatment between the branches of service when 10 U.S.C. § 6332, a Department of Navy-only statute, was read to limit the reach of the UCMJ. While the court resolved the disparity through other means in *Sloan* (*see* n. 24, *supra*), it remained a concern of Chief Judge Sullivan, who wrote in concurrence, "I join the principal opinion today in its decision not to overturn that portion of [Allen] concerning the reduction in grade and pay of court-martialed retired members. However, I am not adverse to revisiting this issue in a Navy case. As for appellant [an Army retiree], I think that, as a matter of constitutional law and codal intent, he is entitled to equal treatment." 35 M.J. at 12 (Sullivan, C.J., concurring).

[26] Naval Appropriations Act of 1916, Ch. 417, 38 Stat. 589, 590 ("[T]he Secretary of the Navy is authorized to transfer to the Fleet Naval Reserve at . . . his discretion any enlisted man of the naval service with twenty or more years naval service . . . .").

[27] *Id.* at 591 (emphasis added).

[28] Naval Reserve Act of 1938, ch. 690, 52 Stat. 1175, 1178 ("Provided, That all transfers from the Regular Navy to the Fleet Naval Reserve or to the Fleet Reserve, and all transfers of members of the Fleet Naval Reserve or the Fleet Reserve to the retired list of the Regular Navy, heretofore or hereafter made by the Secretary of the Navy, shall be conclusive for all purposes, and all members so transferred shall, from the date of transfer, be entitled to pay and allowances, in accordance with their ranks or ratings and length of service as determined by the Secretary of the Navy . . . .").

Since then, and with the enacting of the UCMJ in 1950, Congress has subjected retirees to court-martial.[30] It has allowed general courts-martial to, "under such limitations as the President may prescribe, adjudge any punishment not forbidden by this code."[31] Congress has excluded some personnel from prosecution at certain types of courts-martial,[32] and entirely prohibited special and summary courts-martial from adjudging dismissals or dishonorable discharges.[33] Recently, Congress directed that any "person subject to this chapter" guilty of certain offenses must receive a minimum sentence of a dishonorable or bad-conduct discharge, subject only to exceptions not based on personal status.[34]

Likewise, under authority delegated by Congress, the President has consistently declined to allow courts-martial to adjudge "administrative separation[s] from the service[s.]"[35] The President has provided that a "dishonorable discharge… may be adjudged only by a general court-martial. . . for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized in civilian jurisdictions as felonies, or of offenses of a military nature requiring severe punishment."[36]

---

[29] Armed Forces Reserve Act of 1952, ch. 608, 66 Stat. 481, 505 ("The unrepealed provisions of the Naval Reserve Act of 1938 . . . continue to apply . . . .").

[30] Act of May 5, 1950, Ch. 64 Stat. 107, 109.

[31] *Id*. at 114. The current article, Article 18(a), UCMJ, remains substantially the same.

[32] *Id*. ("[S]ummary courts-martial shall have jurisdiction to try persons subject to this code except officers, warrant officers, cadets, aviation cadets, and midshipmen . . . ."). The current article, Article 20, UCMJ, remains substantially the same.

[33] *Id*. Articles 19 and 20 of the current version of the UCMJ retain the same prohibitions.

[34] National Defense Authorization Act (NDAA) for Fiscal Year 2014, Pub. L. No. 113-66, 127 Stat. 672, 959 (2013). As none of the appellant's offenses occurred exclusively after its effective date of 24 June 2014, we cite this provision for interpretative purposes only, and not as substantive law dictating the appellant's sentence. *See* FY 2015 NDAA, Pub. L. No. 113-291, 128 Stat. 3292, 3365 (2014).

[35] MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES, 1968, ¶ 126a. The rule applicable at the appellant's court-martial, RULE FOR COURTS-MARTIAL (R.C.M.) 1003(b)(8), MCM (2012 ed.), was substantially the same.

[36] R.C.M. 1003(b)(8)(B).

Neither Congress—through the UCMJ—nor the President—through the RULES FOR COURTS-MARTIAL— has directly limited the authority of a court-martial to adjudge a discharge for a member in a retired status.

For this reason, we decline to override long-standing, military justice-specific provisions in the MCM subjecting those in a retired status to courts-martial and broadly authorizing those courts-martial to adjudge a punitive discharge. We make this decision particularly in light of the fact that Congress expressly exempted other classes of personnel from dismissal or dishonorable discharge within the UCMJ, *but not retirees*.[37]

We agree that "[t]he only consistent, contextual reading of [the statute] is that a transfer to the retired list is conclusive in all aspects as to the fact that the member was transferred to the retired list on a certain date, in a certain grade, and with creditable service as determined by the Secretary."[38] We thus find that the statute does not preclude removal from the Fleet Marine Reserve or the retired list of a member who received a punitive discharge or dismissal from court-martial, when approved by the CA and affirmed by our court.

Such a reading harmonizes the statute with the other UCMJ provisions discussed *supra*. Unlike the reduction in rank of a retiree prohibited by *Allen* and *Sloan*, there is neither long-standing Navy policy against the punitive discharge of retirees,[39] nor other factors which might support an expansive reading of the statute. Here, the appellant committed felony-level offenses meriting a dishonorable discharge. Collateral effects on issues like retired pay are policy matters within the discretion of Congress.

## C. Incorrect court-martial order

Although not raised by the appellant, we note that the court-martial order (CMO) fails to reflect that the military judge consolidated Specifications 1 and 2 of Charge II into one specification after ruling the specifications an unreasonable multiplication of charges as applied to findings.[40]

---

[37] *See United States v. Wilson*, 66 M.J. 39, 45-46 (C.A.A.F. 2008) ("'[Where] Congress includes particular language in one section of a statute but omits it in another section . . . it is generally presumed that Congress acts intentionally and purposely in the disparate . . . exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (alterations in original) (additional citation omitted).

[38] Appellee's Brief of 7 Sep 2016 at 13 (citation omitted).

[39] *See, e.g. United States v. Overton*, 24 M.J. 309 (C.M.A. 1987); *Hooper*, 26 C.M.R. at 419.

[40] Record at 101; Appellate Exhibit XI.

Likewise, we note that the consolidated specification of Charge II, Specification 1 of  Additional Charge I, and Specifications 1 and 2 of Additional Charge II each erroneously describe the appellant as having exclusively been "on the active duty retired list" through his commission of the offenses. Though, per our discussion *supra* at note 3, the appellant was equally amenable to court-martial jurisdiction whether as a Fleet Marine Reserve member or on the retired list.

The appellant now does not assert, and we do not find, any prejudice resulting from these errors. Nevertheless, the appellant is entitled to have the CMO accurately reflect the results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

The supplemental court-martial order shall reflect that in the consolidated specification of Charge II, the specification of  Additional Charge I, and Specifications 1 and 2 of Additional Charge II, the appellant was "on the active duty retired list or on the Fleet Marine Corps Reserve List."

The supplemental court-martial order shall also reflect that the military judge consolidated Specifications 1 and 2 of Charge II into a single specification for findings and sentence, to read as follows:

In that Gunnery Sergeant Derek L. Dinger, U.S. Marine Corps (Retired), on the active duty retired list or on the Fleet Marine Corps Reserve List, did, at or near Okinawa, Japan, between on or about 11 October 2012 and on or about 4 September 2014, knowingly and wrongfully receive, possess and view child pornography, to wit, images and videos of minors engaging in sexually explicit conduct, which conduct was of a nature to bring discredit upon the armed forces.

Chief Judge GLASER-ALLEN and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court