# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39440**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Joseph A. BALLARD**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 September 2019

———————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 40 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 1 November 2017 by GCM convened at Little Rock Air Force Base, Arkansas.

*For Appellant:* Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, MINK, and LEWIS, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge MINK joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

LEWIS, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas and in accordance with a pretrial agreement (PTA), of the following offenses: (1) one specification of rape of a child, six specifications of aggravated sexual contact with a child, and one

specification of indecent liberties with a child, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920;[1] (2) one specification of rape of a child and three specifications of sexual abuse of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b;[2] and (3) three specifications of sodomy of a child, in violation of Article 125, UCMJ, 10 U.S.C. § 925.[3] The military judge sentenced Appellant to a dishonorable discharge, confinement for 50 years and one day, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved only 40 years of confinement in accordance with the PTA and approved the remainder of the adjudged sentence.

Appellant raises two issues for our consideration: (1) whether the United States Constitution permits the court-martial of a retired service member; and (2) whether a delay in post-trial processing warrants relief. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant sexually abused his biological daughter[4] in various ways over his last three active duty assignments until he retired from the United States Air Force on 31 August 2016. The sexual abuse began in January 2009 when Appellant, his wife, and daughter were assigned at Kadena Air Base (AB), Okinawa, Japan. At the time, Appellant's daughter was in kindergarten and approximately 5 years old.

Specifically while at Kadena AB, Appellant committed sexual abuse of a child who had not attained the age of 12 years by causing his daughter to rub his penis with her hands and by touching his daughter's genitalia with his hand. Appellant also committed indecent liberties with a child by causing his daughter to watch pornography. Appellant committed each of these offenses on divers occasions.

During this assignment at Kadena AB, Appellant also sexually abused GF and GM. Both GF and GM were about the same age as Appellant's daughter and the three girls were in the same grade in school. Sometimes Appellant sexually abused two of the three girls together by causing them to engage in

---

[1] These specifications use the version of Article 120, UCMJ in effect between 1 October 2007 and 27 June 2012. *See Manual for Courts-Martial, United States* (2012 ed.), App. 28, at A28–1. (2012 *MCM*).

[2] *See Manual for Courts-Martial, United States,* pt. IV, ¶ 45b (2016 ed.) (2016 *MCM*).

[3] *See* 2012 *MCM*, pt. IV, ¶ 51.

[4] We decline in this case to further identify Appellant's daughter by her initials.

sexual contact with each other. Other times, he would sexually abuse one of the girls when he had her alone.

Appellant took advantage of his daughter's friendships with GF and GM to sexually abuse the girls when they visited his home. Appellant also took advantage of the relationships his family had with GF's and GM's families to maintain access to the girls. In the case of GF, her family lived on base and her mother was friends with Appellant's wife. In the case of GM, her father was in the United States Air Force and their family lived in the same neighborhood as Appellant and his family.

On one occasion, Appellant saw his daughter and GF partially undressed while playing dress-up in his daughter's room. Appellant committed aggravated sexual contact on a child by having the girls completely undress, lay on the bed, interlock their legs and rub their genitalia together. On other occasions, Appellant sexually abused GF when he had her alone. On divers occasions, Appellant lured GF into his bedroom and committed sodomy on a child under the age of 12 years, by having her perform oral sex on him by placing his penis inside her mouth. Appellant warned GF multiple times that she should not tell anyone their secret.

Appellant also lured GM to come to his bedroom alone. He specifically did this by offering her candy. Once there, Appellant committed sodomy on a child under the age of 12 years by having GM perform oral sex on him by placing his penis inside her mouth. Appellant gave GM less candy if she stopped performing oral sex on him too soon. In addition to committing sodomy with GM, other times, Appellant had GM undress and he committed aggravated sexual contact of a child under the age of 12 years when he placed GM on top of his body so his erect penis touched her buttocks and genitalia. Appellant told GM that if she ever said anything about what they were doing, they would both get in trouble.

Upon completion of the assignment at Kadena AB, in the summer of 2011, Appellant and his family moved to Osan AB, Republic of Korea. Appellant lost access to GF and GM and his sexual abuse of these two girls ended. However, the sexual abuse of his daughter escalated from sexual contact to sexual acts. First, Appellant raped his daughter by penetrating her vulva with his penis approximately four times. Second, Appellant committed sodomy upon his daughter by inserting his penis into her mouth approximately four times. His daughter was about 8 years old when he committed these offenses.

Appellant's final active duty assignment began in the summer of 2013, at Misawa AB, Japan. His sexual activity with his daughter increased in frequency during this assignment. Appellant "frequently" raped his daughter by penetrating her vulva with his penis in different sexual positions. At one

point, Appellant's daughter feared she was pregnant with Appellant's child. Later, she realized she was not pregnant.

While at Misawa AB, Appellant also began kissing his daughter on the mouth. The kisses lasted for 10 to 15 seconds at a time and were characterized by Appellant as how a boyfriend would kiss his girlfriend for sexual gratification. As Appellant's daughter turned 12 years old during the Misawa AB assignment, Appellant pleaded guilty to two specifications of sexual abuse of a child for kissing her, in this manner, both before and after her 12th birthday.

As Appellant awaited his 31 August 2016 retirement date, he and his family moved back to the United States. Appellant's final offense against his daughter, sexual abuse of a child, occurred when Appellant continued to kiss his daughter, on divers occasions. Appellant kissed his daughter for sexual gratification in the same manner that he kissed her at Misawa AB, Japan.

Now back in the United States, in September 2016, Appellant's daughter reconnected with GM on social media. As the two girls communicated on Instagram, Appellant's daughter told GF that she recently learned the meaning of the words "molestation" and "incest." Appellant's daughter confided in GF that her father had taken her virginity. GF similarly shared that the memories of Appellant's abuse were burned in her head and that she felt dirty every day.

On 6 September 2016, Appellant's daughter reported to a school official that Appellant had been sexually abusing her. At the time of the report, Appellant had been retired from the Air Force for less than a week. By the date of Appellant's court-martial, his daughter, GF, and GM were all 13 years old.

## II. DISCUSSION

### A. Jurisdiction over an Air Force Retiree

#### 1. Additional Background

On 7 February 2017, the Eighteenth Air Force commander requested the Acting Secretary of the Air Force approve Appellant's recall to active duty in accordance with Article 2(a)(4), UCMJ, 10 U.S.C. § 802(a)(4).[5] On 11 April 2017, the Acting Secretary of the Air Force approved "any recall to active duty of Master Sergeant (Ret) Ballard so that he may be tried by court-martial."

---

[5] All further references in this opinion to the UCMJ and Rules for Courts-Martial are to the 2016 *MCM*.

During Appellant's court-martial, trial defense counsel raised no challenge to the jurisdiction of the court-martial. Appellant stipulated that the court had jurisdiction over him. When the military judge inquired further on this provision in the stipulation of fact, Appellant agreed, under oath, that he was on active duty and that the Air Force had jurisdiction over him and the offenses to which he pleaded guilty.

Instead of challenging jurisdiction, trial defense counsel requested the military judge find that Appellant could not be sentenced to a punitive discharge or reduction to the grade of E-1 because he was a retiree. Trial counsel opposed the request noting that all of Appellant's offenses occurred while Appellant was on active duty. The military judge reviewed the case law cited by the Defense and determined a punitive discharge and reduction to the grade of E-1 were authorized punishments. On appeal, Appellant does not challenge the military judge's ruling on authorized punishments.

On appeal, Appellant asserts for the first time that the Make Rules Clause of the United States Constitution, U.S. CONST. art. 1, § 8, cl. 14, restricts court-martial jurisdiction from being exercised against a retiree like Appellant.[6] In Appellant's view, Congress exceeded its authority in Article 2(a)(4), UCMJ, by applying the UCMJ to "Retired members of a regular component of the armed forces who are entitled to pay." We disagree.

**2. Law**

We review de novo questions of jurisdiction. *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019). "A question of jurisdiction is not subject to waiver and may be raised at any time." *United States v. Daly*, 69 M.J. 485, 486 (C.A.A.F. 2011) (citations omitted).

"The Framers of the Constitution entrusted in Congress the power 'To make Rules for the Government and Regulation of the land and naval Forces[.]'" *United States v. Christian*, 63 M.J. 205, 207 (C.A.A.F. 2006) (quoting U.S. CONST. art. 1, § 8, cl. 14) (Make Rules Clause). "[T]he Constitution contemplates that Congress has 'plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline.'" *Weiss v. United*

---

[6] Appellant does not challenge the jurisdictional scheme of Article 2(a), UCMJ, on the grounds that it violates the Fifth Amendment, U.S. CONST. amend. V. We are aware of the recent decision of the United States Navy-Marine Corps Court of Criminal Appeals in *United States v. Begani* where the court found "that the UCMJ's jurisdictional structure for retirees violates the right of equal protection imputed to the Fifth Amendment." ___ M.J. ___, No. 201800082, 2019 CCA LEXIS 316, at *28 (N.M. Ct. Crim. App. 31 Jul. 2019). We considered but declined to specify this additional constitutional challenge in this case.

*States*, 510 U.S. 163, 177 (1994) (quoting *Chappell v. Wallace*, 462 U.S. 296, 301 (1983)).

"Congress has exercised its control over military discipline through the Uniform Code of Military Justice, which establishes an integrated system of investigation, trial and appeal." *United States v. Muwwakkil*, 74 M.J. 187, 195 (C.A.A.F. 2015) (internal quotation omitted). "Retired members of a regular component of the armed forces who are entitled to pay are subject to the UCMJ and, therefore, trial by court-martial." *United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018), *cert. denied* __ U.S. __, 139 S. Ct. 492 (2018) (internal quotation and citation omitted).

"In construing statutes, jurisdictional and otherwise, we apply the accepted rules of statutory construction." *EV v. United States*, 75 M.J. 331, 333 (C.A.A.F. 2016). "One is that an unambiguous statute is to be enforced according to terms: '[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id.* at 333–34 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). "Whether the statute is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

### 3. Analysis

We find Congress did not exceed its constitutional authority under the Make Rules Clause when they enacted Article 2(a)(4), UCMJ, and permitted the court-martial of a retired member of a regular component of the armed forces entitled to pay. Contrary to our conclusion, Appellant claims we should use a narrower definition of who is a part of the land and naval forces. To support his position, Appellant provides three justifications, two of which are grounded in United States Supreme Court precedent and the third is grounded in Section 101(2) of Title 38, *Veterans' Benefits,* and the definition of a "veteran." We are not persuaded by any of Appellant's arguments. We briefly explore the three justifications raised and explain why we find them inapplicable.

Appellant's first justification for his position relies on cases which determined who could not be subjected to court-martial jurisdiction under the Constitution. We limit our discussion to three instructive cases cited by Appellant. In each case, the United States Supreme Court held the exercise of jurisdiction unconstitutional. *McElroy v. Guagliardo*, 361 U.S. 281 (1960) (Air Force civilian employee assigned overseas); *Reid v. Covert*, 354 U.S. 1 (1957) (military spouse living overseas); *United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955) (honorably discharged Airman with no relationship of any kind to the military).

After considering the three cases, we find they do not control the constitutionality of jurisdiction over a retired member of the Air Force, like Appellant. The "classes of civilians connected with the military" in *Toth*, *Reid*, and *McElroy* are different than Appellant. *See Noyd v. Bond*, 395 U.S. 683, 696 n.8 (1969). Article 2(a)(4) does not attempt to reach these "classes of civilians." Instead, the plain and unambiguous language of Article 2(a)(4) reached Appellant as a retired member of a regular component who was entitled to pay.

Appellant's second justification for his position comes from United States Supreme Court precedent on taxation of military retired pay by a state. In *Barker v. Kansas*, 503 U.S. 594 (1992), the Court held "for purposes of 4 U.S.C. § 111, military retirement benefits are to be considered deferred pay for past services." 503 U.S. 594, 605 (1992). Appellant claims that *Barker* "confirms that military retirees are pensioners, not part-time, salaried employees" and the case "eliminated the central analytical justification for holding that retirees remain members of the land and naval forces under the Make Rules Clause . . . ." A similar argument to Appellant's claim failed before the United States Navy-Marine Corps Court of Criminal Appeals in *United States v. Dinger*, 76 M.J. 552 (N.M. Ct. Crim. App. 2017). Like our sister service court, we conclude "notwithstanding *Barker* and its implications regarding the tax status of retired pay . . . those in a retired status remain 'members' of the land and Naval forces who may face court-martial." *Id.* at 557.[7]

In his third justification for his position, Appellant urges us to use the definition of "veteran" from 38 U.S.C. § 101(2) to conclude he is a former member of the Air Force. We decline Appellant's invitation. Section 101(2) of Title 38 is "not part of the integrated UCMJ, [and] does not mention the UCMJ [or a] court-martial." *See Dinger*, 77 M.J. at 453. The definition of "veteran" does not attempt to limit the exercise of court-martial jurisdiction over a military retiree and the statute is not even contained in Title 10 of the United States Code. If we found ambiguity in the plain language of Article 2(a)(4)—which we do not— we would look to 10 U.S.C. § 8075, the statute which explains the composition of the Regular Air Force.[8] There we would see, yet again, that Appellant remained part of the Air Force's composition which includes "the retired officers and enlisted members of the Regular Air Force." 10 U.S.C. § 8075(b)(3).

We conclude Appellant was undoubtedly a retired member of the regular Air Force entitled to retired pay at the time he was recalled to active duty for purposes of facing a court-martial. He committed all of the offenses to which

---

[7] The CAAF did not address this assignment of error as the grant of review in *Dinger* was limited to a single issue: whether a dishonorable discharge was a prohibited sentence for a Marine Corps retiree. 77 M.J. at 448.

[8] This section was redesignated as 10 U.S.C. § 9075 (effective 2 February 2019).

he pleaded guilty while on active duty. We note our superior court has repeatedly upheld the exercise of court-martial jurisdiction in the face of challenges similar to one Appellant makes in this case. *See, e.g.*, *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018); *Pearson v. Bloss*, 28 M.J. 376, 378–80 (C.M.A. 1989); *United States v. Hooper*, 26 C.M.R. 417, 421–25 (C.M.A. 1958). We find the Congress acted well within the authority entrusted to them by the Constitution's Make Rules Clause when they permitted court-martial jurisdiction of retired members of a regular component of the armed forces who are entitled to pay in Article 2(a)(4).[9]

## B. Post-trial Processing Delay

It took 135 days from the day Appellant was sentenced for the convening authority to take action. Appellant requests unspecified "modest relief" under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), by asking us to decline to affirm "a portion" of the sentence.

Much of the post-trial processing delay is attributed to victim impact statements under R.C.M. 1105A arriving after the staff judge advocate signed her recommendation to the convening authority. Appellant's daughter, GM, GM's father, and GF each addressed the convening authority in writing. It appears the staff judge advocate's office received several of the statements at differing times and the staff judge advocate twice gave Appellant a full ten days to respond to the "new matter" under R.C.M. 1106(f)(7). We do not find any sentence relief appropriate in this case as the length of the delay exceeds the presumptively unreasonable standard by only 15 days and the primary reasons for the delay were to ensure a crime victim's right to present matters to the convening authority and to preserve Appellant's right to review and respond to this "new matter."

Where the convening authority's action is not taken within 120 days of the end of trial, we apply the presumption of unreasonable post-trial delay established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135 (citations omitted). In conducting our analysis, we consider the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to

---

[9] Given our conclusions on the constitutionality of Article 2(a)(4), we do not reach other arguments offered by the Government on jurisdiction including: (1) Article 3(a), UCMJ, 10 U.S.C. § 803(a), should be read in conjunction with Article 2(a)(4) to find jurisdiction; and (2) Appellant submitted himself to jurisdiction under Article 2(c), UCMJ.

find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533; *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990)).

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the 135 days that elapsed between the conclusion of trial and the convening authority's action are not so egregious as to impugn the fairness and integrity of the military justice system.

Appellant specifically requests *Tardif* relief for excessive post-trial delay and notes that we may grant such relief even in the absence of prejudice. The Government opposes granting relief under Article 66(c), UCMJ, which "should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely post-trial processing and appellate review." *Tardif*, 57 M.J. at 225.

After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that such an exercise of our authority is not appropriate in this case. On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay. Instead, we perceive a modest delay attributable mostly to ensuring compliance with R.C.M. 1105A and R.C.M. 1106(f)(7). We find no evidence of bad faith or gross indifference to post-trial processing. We see no harm to Appellant and the delay has not lessened the impact of any particular aspect of his sentence. We observe no institutional neglect and find no erosion of this court's ability to conduct our review or grant appropriate relief. For these reasons, we decline Appellant's request for modest relief from his approved sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Ar-

ticles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[10]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[10] We note the following errors in the promulgating order: (1) "Specification" is misspelled in Charge I, Specification 2; (2) "Misawa" is misspelled in Charge II, Specifications 6 and 17. We direct the publication of a corrected court-martial order to remedy the errors.